# Wytheville

JAMES UPSHUR V. COMMONWEALTH OF VIRGINIA.

June 8, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*J. Thomas Newsome,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

James Upshur, hereinafter referred to as the defendant, was tried and convicted by a jury upon the charge of unlawfully manufacturing ardent spirits, and for having in his possession material and equipment for the unlawful manufacture of such spirits. It was also alleged in the warrant upon which he was tried, and admitted by the defendant, that he had been previously convicted of a violation of the provisions of the Virginia Alcoholic Beverage Control Act, Code 1936, section 4675 (1) *et seq.*

The defendant moved to set aside the verdict as being contrary to the evidence and for misdirection of the jury. The trial court denied the motion, and entered judgment in accordance with the verdict.

The record discloses the following material and pertinent facts:

On May 11, 1937, the sheriff of Northampton county, attended by several other law officers, came upon a distillery for ardent spirits in full operation in that county, near Nassawadox. Two negro men were found present operating the still. One of these men, Thomas Burton, escaped and has not been apprehended, but the other, Roland Giddings, was captured. Giddings was arrested and taken to the county jail.

Giddings informed the officers that on the same morning, he had met James Upshur, also a colored man, who was a merchant, at the latter's store. He then went for an automobile ride with Upshur in Upshur's car. They were joined by Burton, and the three drove to the post office and railway station. Upshur left the car, went to the post office and station, and brought back with him some sample cough drops. The three then rode back to Upshur's store, and from there drove out of town three or four miles to a swamp. At the last place, under the direction of Upshur, a still was set up, a fire started and whiskey was started running. Upshur then left, saying he would return in a few minutes, and while he was absent, the officers came upon the still.

At the scene of the distillery the officers found two fifty gallon drum boilers, one five gallon doubler, two flake stands or coolers, two coils, 175 gallons of mash, fifteen gallons of whiskey, and other equipment for manufacturing whiskey, besides a pencil and some empty cough drop packages.

The sheriff, together with an inspector for the A. B. C. Board, went to the store of Upshur; and there arrested him as the owner and operator of the still. He was taken to Nassawadox, and according to the testimony of the officers, in the presence of the Commonwealth's attorney and themselves, is said, after first denying his guilt, to have voluntarily admitted that the mash and the outfit belonged to him, including the pencil there found, as well as the cough drop packages. He stated that he had carried the other two men to the still, and when found they were operating it for him. After this alleged confession, upon being advised that his trial would probably take place the following day, he requested a delay of a week or ten days, in order that he might get some of his business matters straightened out. The delay was granted upon the agreement of Upshur to plead guilty upon his trial, and Upshur was thereupon released upon bond for his further appearance.

Giddings further testified that some days later, while both were released on bond, Upshur came to his house, and asked him to take the blame in the matter, and promised to employ counsel for Giddings. This conversation was corroborated by the testimony of Giddings' sister.

The defendant, at his trial, pleaded not guilty, and denied having any participation in the crime. He admitted that he had been with Giddings in the morning, but denied having taken him to the still. He denied having admitted anything to the officers, which connected him with the still or its operation. He admitted his visit to Giddings after his arrest, but said he merely asked Giddings why the latter put the blame on him.

The first assignment of error relates to the action of the court in admitting the alleged confession.

When the objection to the admission of this evidence was raised, the jury was excused from the court room, and the first witness was examined before the trial judge. This witness, an inspector for the A. B. C. Board, testified that at the beginning of their interview with the defendant, he was informed that any statement he might make could be used for or against him; that no threats or promises of benefits were made to the defendant and no duress was exercised; that there was no persuasion, nor any abuse or violence or threats of violence; and that the confession was freely and voluntarily made. The sheriff corroborated the evidence of the inspector, and likewise stated that the defendant was not made any promise or threat, and that he was not subject to any abuse or violence, or threat of violence.

It appears that during the examination of the defendant, a remark was made by one of the officers that the offense could be tried either in Northampton county, or in Norfolk, presumably having reference to the Federal jurisdiction. Nothing was said about a difference in the degree of punishment, or nothing said to indicate that the accused knew, or thought he would gain an advantage, or suffer an injury by being tried in one place instead of the other, or any intimation that it would be better for the accused to be tried in the county.

The consent to delay the trial in order to give the accused a week or ten days in which to straighten up his business, was made at the request of the accused after the confession had been made. No objection was made to the evidence of the sheriff as a witness to the confession.

Upon the issue as to the admissibility of the confession, the defendant did not testify. In his subsequent appearance on the stand as a witness after the close of the Commonwealth's case, he denied making any confession at all. He did not offer any evidence that any duress was exercised against him, or that any threats, or promises of favor were made. There was no other evidence, either before the trial judge or the jury that the confession was involuntary. Nor did the defendant undertake to bring before the jury

the circumstances attending the confession, which were testified to before the trial judge in the absence of the jury.

█ On the issue of its admissibility, the trial judge properly admitted before the jury the evidence of confession.

██ In Virginia, it is the function and duty of the trial judge in the first instance before admitting a confession, to determine from the evidence, in the absence of a jury, whether the confession has been freely and voluntarily made. In this decision of a question of fact he has a wide discretion. *Omohundro* v. *Commonwealth,* 138 Va. 854, 121 S. E. 908.

██ Thus the admissibility of a confession is a question for the court, and not for the jury. The court does not vouch for the confession, but admits it to the jury to be considered and weighed like other evidence. Its weight, its value and its sufficiency is a question for the jury.

█ " * * * The jury are to weigh confessions like other evidence and believe or disbelieve them, in whole or in part, as reason may decide; and if, from opposing evidence or the confession itself, facts appear which are sufficient to satisfy a rational mind that a part is not true, it ought to be rejected." *Earhart* v. *Commonwealth,* 9 Leigh (36 Va.) 671; *Brown* v. *Commonwealth,* 9 Leigh (36 Va.) 633, 33 Am. Dec. 263; *Flick* v. *Commonwealth,* 97 Va. 766, 34 S. E. 39.

██ The instant case presents an unusual situation. The defendant in his evidence before the trial court steadfastly held to his contention that he never made any confession. Here and in his petition for a writ of error, he asks for a reversal of the judgment against him upon the ground that the confession introduced in the evidence was secured by threats or by promises of favor. Both contentions cannot be true. If the defendant made no confession, it is evident that neither fear nor favor moved him. If he did make the confession, it is equally clear that his testimony upon trial was false. The successive positions of the defendant are not only inconsistent with each other, but they are mutually contradictory. To sustain his subsequent contention, he

asks us to disregard his evidence, and accept as true the evidence of the officers that a confession was made, but to refuse to accept their evidence that it was voluntarily made. His latter contention is without merit, and wholly without supporting evidence. On this point, the question before the jury was whether or not the confession was made, not whether it was voluntary or involuntary. That was an issue for the jury, and the verdict of the jury resolved the question adversely to the defendant.

The next assignment of error relates to the refusal of the trial court to grant two instructions at the request of the defendant.

The first of these instructions undertook to tell the jury that it was their duty to consider the confession in whole and not in part. The instruction is correct as an abstract proposition of law. A defendant is entitled to such an instruction, when a portion of the confession exculpates him, and a portion incriminates him; when a portion of the statement is favorable, or is capable of having more than one meaning. In this case all of the confession was unfavorable to the accused. No portion of it exonerated him. There was no conflict in the statement as to his guilt or innocence. The confession could not be separated into parts, and any instruction relating thereto would have been misleading. There was no issue as to the effect of the confession, but the issue was whether or not it was made. There being no evidence upon which the instruction could have been based, it was not error to refuse it.

The second of the refused instructions had the effect of telling the jury that they were the judges of the question of whether certain evidence was competent and admissible, and that if they thought the confession was not voluntarily made, they "should not consider it as evidence." As we have said, whether a confession is voluntary or involuntary is a question for the court. After it has been admitted as evidence it must be considered, but the weight to be attached to it, under the facts and circumstances, is

a question for the jury. The jury are confined to its credibility and effect.

In addition to this, the instruction sought to tell the jury that if they believed the confession was obtained by personal abuse, or violence, ill usage, assault, etc., they must disregard it. There was no issue before the jury of this character. For these several reasons, the instruction was properly refused.

There is no merit in the assignment of error that the verdict was contrary to the evidence. There is abundant evidence to support the verdict.

Both the circumstances testified to by the accomplice and the confession of the defendant force the conclusion that the defendant was guilty of the offense charged. The credibility of both was a question for the jury, and they have found against the defendant. Their verdict is supported by the approval of the trial judge.

The judgment of the trial court is affirmed.

*Affirmed.*