# Richmond

## LINWOOD REID v. COMMONWEALTH OF VIRGINIA.

October 11, 1965.

Record No. 6130.

Present, All the Justices.

*Robert D. Powers, Jr.* and *Donald G. Wise,* for the plaintiff in error.

*William G. Boice, Special Assistant to the Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

EGGLESTON, C. J., delivered the opinion of the court.

Linwood Reid, indicted for the murder of Sophie Harding, was tried and found guilty by a jury of murder in the second degree and his punishment fixed at confinement in the penitentiary for twenty years. Through the same court-assigned counsel who defended him in the court below he has appealed. In his assignments of error he contends that the lower court erred in these respects:

(1) In admitting in evidence his purported confession without first hearing his testimony that it was not voluntary;

(2) In admitting in evidence the confession "without independent proof beyond a reasonable doubt of the *corpus delicti*";

(3) In its rulings on the instructions to the jury; and

(4) In not setting aside the verdict of the jury on the ground that it was contrary to the law and the evidence.

Viewed in the light of the verdict, the evidence on behalf of the Commonwealth showed that on the early morning of September 5, 1964, a fire occurred at 1361 Watson street in the city of Portsmouth. Responding to a call, members of the fire department went to the premises where they found the bedroom and bed on fire. Sophie Harding was found to have been severely burned and in a critical condition. She was taken to a local hospital where she died on September 15 as the result of the burns which she had received. At the time of the fire the premises were occupied by Sophie Harding and the defendant Reid who were living there as man and wife, though unmarried.

Investigators for the state and local fire departments testified that the mattress on the bed was burned and that the heavy charring of the floor near the bed indicated that the fire had started there. They found no defects in the electrical wiring or other evidence that the fire had been caused by accidental means. Indeed, a deputy state fire marshal testified that from the obvious situation "the fire couldn't have been caused by accident."

While there is no evidence that the defendant Reid was present at the house at the time the police and members of the fire department

responded to the alarm, a neighbor testified that at the time of the fire he saw the defendant running down the street calling for help. Later the defendant told an investigating officer that when he arrived home he found Sophie's clothing on fire, that after attempting to extinguish the flames he became scared and "left the scene."

A detective who had participated in investigating the fire testified that the defendant was picked up at his place of employment and brought to police headquarters on September 14. He further testified that after having been interrogated the defendant signed a written statement or confession. The defendant objected to the admission of this statement or confession, on the ground that the *corpus delicti* and particularly the defendant's connection with the alleged occurrence had not been established. The lower court overruled this objection.

In the absence of the jury, the court heard the evidence on behalf of the Commonwealth as to the circumstances under which the statement or confession had been obtained from the defendant. The detective testified that the statement was "purely voluntary," without the promise of "any reward or leniency," and was given after the defendant had been told that he need make no statement unless he so desired and that anything he said might be used against him.

After such evidence had been heard counsel for the defendant asked the court to hear his testimony which, they said, would indicate that the confession was not voluntarily given. The court declined to hear this proffered evidence by the defendant at this time, stating that later during the trial he would be given an opportunity of presenting such evidence. Without hearing the defendant's evidence on this issue, and over his objection, the court then ruled that the confession was voluntary and should be admitted in evidence.

The trial was resumed before the jury and the written statement or confession was introduced and read to the jury. The substance of the confession was that the defendant and Sophie Harding had visited "Mary Brown's house" on Chestnut street where they drank whiskey together; that they returned home and engaged in a fight; that she picked up a gallon jug of kerosene and tried to strike him with it; that he grabbed her, threw her on the bed, and took the jug from her; that some of the oil spilled on the bed and on her clothes; that he struck a match and threw it on the bed which caught on fire; that Sophie's dress also caught on fire; and that he carried the woman to the porch where he eventually extinguished the fire on her clothes.

Frightened by this situation, he left Sophie sitting on the porch and ran away.

Before the jury the defendant took the stand, repudiated the confession, and testified that he had not made the statements therein contained. Moreover, he said that he did not sign the purported confession voluntarily, but because the detective told him that he would not be permitted to leave the room until he had done so.

The defendant further testified that there had been no difficulty between him and Sophie on the night preceding the fire. He said that after they had visited several friends together they parted "on good terms." He went to a dance while she went home; that when he returned home, about 5:00 o'clock the next morning, he found that the fire had occurred and that Sophie had been badly burned. He then "went down the street, hollering for help." He denied that he was at home when the fire occurred, that a fight had occurred between them, or that he had struck a match and set her clothing on fire, as indicated in the purported confession.

■ We agree with the defendant's position that the lower court committed prejudicial and reversible error in admitting in evidence his alleged confession before first hearing his proffered testimony that it was not voluntary.

In this State the determination of the admissibility of a confession is the function of the court. Its credibility, weight and value are for the jury. It is the duty of the court before admitting in evidence a confession to determine from the evidence, in the absence of the jury, whether it was freely and voluntarily made. *Upshur* v. *Commonwealth*, 170 Va. 649, 655, 197 S. E. 435, 437; *Campbell* v. *Commonwealth*, 194 Va. 825, 830, 75 S. E. 2d 468, 471, and cases there cited; *McCoy* v. *Commonwealth*, 206 Va. 470, 475, 144 S. E. 2d 303, 308, this day decided.

In determining whether a confession is voluntary the court should hear and consider all of the evidence on the subject—that offered by the accused as well as that offered by the prosecution. *Omohundro* v. *Commonwealth*, 138 Va. 854, 863, 121 S. E. 908; 23 C. J. S., Criminal Law, § 836, p. 249; *Id.*, § 838, p. 265 ff. The court's determination of that issue is entitled to the same weight and effect as is accorded a finding of fact by a jury. *Campbell* v. *Commonwealth, supra*, 194 Va. at 830, 75 S.E. 2d at 471.

It is clear from the record in the present case that the lower court determined solely from the evidence on behalf of the Commonwealth,

and without hearing that of the defendant, that the confession was voluntarily given and therefore admissible.

■ We do not agree with the argument of the Commonwealth that the error in the ruling of the lower court was not prejudicial for the reason that the defendant later took the stand before the jury, repudiated the confession, and denied that it was voluntarily given. In the first place, the admissibility of a confession is to be determined by the facts appearing in evidence when it is received or rejected, and not by facts appearing in evidence at a later stage of the trial. 23 C. J. S., Criminal Law, § 838, p. 271; *State v. Rogers*, 233 N. C. 390, 64 S. E. 2d 572, 576, 577, 28 A. L. R. 2d 1104.

Again, the effect of the court's ruling was to require the defendant to forego his constitutional right to refrain from testifying and compel him to take the stand before the jury in order to present his testimony that the confession was not voluntarily made.

■■ It is further contended that the lower court erred in admitting the confession in evidence because, it is said, there was a lack of "independent proof beyond a reasonable doubt of the *corpus delicti*." The argument is that the *corpus delicti* must be established by evidence independent of the confession and that until this had been done the confession was not admissible. We do not agree with this contention.

Although there is authority for the proposition that the *corpus delicti* must be established by independent evidence alone, such is not the general rule or the rule in this State. 23 C. J. S., Criminal Law, § 916(3), pp. 630, 631; *Bland v. City of Richmond*, 190 Va. 42, 47, 55 S. E. 2d 289, 291.

It is well settled in this jurisdiction that while the *corpus delicti* cannot be established by the extrajudicial confession of an accused, uncorroborated by other evidence, such confession is competent evidence tending to prove the *corpus delicti*. 7 Mich. Jur., Evidence, § 240, p. 616; *Wheeler v. Commonwealth*, 192 Va. 665, 669, 670, 66 S. E. 2d 605, 607, and cases there cited; *Bland v. City of Richmond, supra*. To say that a confession is competent evidence tending to prove the *corpus delicti* is, in effect, to say that the *corpus delicti* need not be established by evidence independent of the confession, but may be established by both.

Here there is ample evidence to corroborate the confession and establish the *corpus delicti* beyond a reasonable doubt. There is no question but that the decedent died from burns sustained in her home as the result of a fire. According to the evidence on behalf of the

Commonwealth, the fire was not accidental. It is undisputed that the defendant and the decedent were at the time living out of wedlock at this address. There is evidence that after discovering the fire the defendant fled the scene.

At the request of the Commonwealth the lower court granted Instruction No. 1, which, in effect, told the jury that under the indictment, if the evidence so warrants, they might find the defendant guilty of murder in the first degree, murder in the second degree, or voluntary manslaughter, each of which was defined, or that they might find him not guilty. The defendant objected to this instruction on the ground that it should tell the jury that they might also find the defendant guilty of involuntary manslaughter and define that crime.

We find that this objection was well taken. Under the evidence of the Commonwealth, particularly the confession of the defendant, the jury could have found that in the prosecution of an unlawful but not felonious act the defendant accidently set fire to the decedent's clothing. If the jury so found, they might have convicted him of involuntary manslaughter. 9 Mich. Jur., Homicide, § 33, pp. 372, 373.

Since there must be a new trial it is not necessary that we consider whether the evidence at the first trial is sufficient to sustain the verdict of the jury.

For these reasons, the judgment is reversed, the verdict set aside, and the case remanded for a new trial in accordance with the views here expressed.

The lower court should allow court-assigned counsel a fee of $200, in addition to their expenses, for their services in prosecuting this appeal.

*Reversed and remanded.*