## Richmond

JAMES C. HAMMER v. COMMONWEALTH OF VIRGINIA.

June 13, 1966.

Record No. 6156.

Present, All the Justices.

*Harry J. Kostel* and *Herbert H. Bateman* (*Jones, Blechman, Woltz & Kelly,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

GORDON, J., delivered the opinion of the court.

This is the third of four companion cases decided today, styled *Hammer* v. *Commonwealth*.

■ Hammer was charged in this case with entering a dwelling house on the night of April 22, 1964 with intent to commit rape. He pleaded not guilty and waived a jury upon advice of court-appointed counsel. The trial judge found Hammer guilty and sentenced him to a term of six years, to run concurrently with another sentence. He appeals from his conviction on several grounds.

The more troublesome questions raised on this appeal have been answered in the opinion in the first companion case. *Hammer* v. *Commonwealth* (Record No. 6154), 207 Va. 135, 148 S.E.2d 878. Defense counsel and the attorney for the Commonwealth, with the concurrence of the trial judge, stipulated that the evidence, rulings, objections and exceptions relating to those questions, as set forth in the transcript of the first companion case, should be applicable to this case.

Hammer gave an incriminating statement respecting this case to lieutenant F. L. Martin of the Newport News police force at 12:45 p.m. on May 15, 1964. The judge admitted this statement as evidence against him at his trial. We hold, for reasons set forth in the opinion in the first companion case, that the statement was improperly admitted because of the uncontradicted evidence concerning a threat made by chief Peach of the Newport News police force.

We reject the arguments that (1) we should hold Hammer's incriminating statement inadmissible on other grounds, (2) Hammer was deprived of his constitutional rights because he had no preliminary hearing or because he did not receive copies of warrants issued against him, and (3) the trial court should have dismissed the indictments against Hammer in this case because of material variances between the indictments and the warrants previously issued against him. Again, the reasons are set forth in the opinion in the first companion case.

■ Only one issue remains, whether the evidence exclusive of the incriminating statement was sufficient to prove guilt beyond a reasonable doubt. Defense counsel argue in their brief that "[t]he evidence linking the defendant . . . [with the assailant on the night of April 22] is too deficient as a matter of law to sustain a conviction" and, even if the identification of Hammer as the assailant be sufficient, the evidence "is not sufficient to sustain a conviction of

burglary *with intent to commit rape*". They ask us, therefore, to enter final judgment dismissing the charge against Hammer.

The prosecutrix in this case was alone at her home in the Hilton Village section of Newport News on the night of April 22, 1964. The front door was closed, but it was unlocked because the prosecutrix expected her husband and children to return home shortly.

While in the bathroom, the prosecutrix heard a noise in another room of her home. She opened the bathroom door and saw a man standing in the dinette. She testified "This man had on black pants. He had on blue sweatshirt with a hood and he had a white hankie or white cloth tied around his face. * * * [H]e had a knife in his right hand and he had a gun in his left hand." The intruder said " 'don't scream, lady, and you won't be hurt' and he came straight to the bathroom . . . and he pointed this knife right at me and he touched me right in the ribs. * * * [H]e said, 'if you don't scream, if you do what I tell you, you won't be hurt' ". The prosecutrix said " 'If you leave me alone, I'll give you some money' and he said, 'I'm not after money' ".

"[W]ith this knife stuck up against my [the prosecutrix] back", the assailant directed the prosecutrix to lock the door, then he conducted her into the bedroom. He then told her to "strip". "[H]e kept telling me strip and I kept standing there and I was scared, shaking and he said, 'if you don't strip, you're going to be hurt' and so I taken off my shoes and everytime I took off a piece of clothes, I just stand there and shake and he keeps sticking the knife against me". Repeatedly during the intermittent "stripping", the prosecutrix told the assailant "you're going to be caught in this house".

After the prosecutrix had removed all her clothing, the assailant shoved her onto the bed. She said again "you're going to be caught in this house . . . if you get caught in here you're going to be hurt". Then the assailant said "he was fixing to leave", and he asked the prosecutrix how much money she had. She took money from her pocketbook and handed it to him. "I told him that's all I had. I want to take my kids to the doctor". Then the assailant returned her money and departed. As he departed he said, "If you don't say anything about this, you won't get hurt".

Hammer was arrested on the night of May 12, as described in the opinion in the first companion case. At police headquarters in the early morning of May 13, the prosecutrix identified him as her

assailant on the night of April 22. Hammer was then wearing a blue sweatshirt and black trousers. He was sitting beside another person (apparently a detective) who was wearing a white or light colored sweatshirt and light trousers. Both had white cloths tied around their faces. The prosecutrix said she identified Hammer by his voice, his eyes and his build. When asked whether it would have been more difficult to make an identification "if there had been five people of the same weight, build, color of hair, size and with the same clothing on", she answered "No sir".

The prosecutrix testified positively that Hammer was the person who entered her home on the night of April 22 and assailed her. On the witness stand Hammer denied he had ever seen the prosecutrix before he saw her at police headquarters on the night of May 12 or in the early morning of May 13. He said he was practicing softball with his team on the night of April 22, but he produced no witness to corroborate his alibi.

Defense counsel argue "there was no reasonable basis for an identification of the defendant [by the prosecutrix]". They say she could have seen only the intruder's eyes and eyebrows when he was in her home, and she could not give his height or weight to the investigating officer. They brush aside the prosecutrix' identification of Hammer at police headquarters because of "the marked contrast between what the defendant and the detective who was in the so-called 'line-up' on May 13 were wearing and the general disparity in their size and appearance".

At best, these arguments go to the credibility of the prosecutrix' positive identification of Hammer as the person who entered her home on the night of April 22. Her testimony, if believed, was obviously sufficient to prove Hammer was that person. The trial judge, sitting without a jury, found her evidence credible. Counsels' arguments are foreclosed by this verdict.

Lastly, defense counsel would have us hold as a matter of law that the evidence was insufficient to prove Hammer entered the prosecutrix' home with intent to commit rape. They argue that intent to rape was not shown because the intruder did not demand, threaten, seek, or attempt to have sexual intercourse with the prosecutrix. They rely upon the prosecutrix' admissions that the intruder made no advances toward her of any sexual nature and that "[h]e never used the word 'rape' ".

Intent is proved by its outward manifestations. Briefly stated,

these are the manifestations proved by the evidence: A man clandestinely entered a home at night; he was armed and his face was partially hidden by a handkerchief; he announced he was not there for money; he forced a woman to go into the bedroom and to remove all her clothing; then he pushed her onto the bed. Despite this evidence counsel ask us to rule as a matter of law that intent to rape was not shown—that these facts and proper inferences from these facts cannot support a verdict of intent to rape.

In an attempt to avoid stretching naivete to the breaking point, counsel do not ask us to believe this man's intentions were honorable. They do not suggest this was another Michelangelo sneaking into an abbey by night intent upon furthering his knowledge of anatomy. Counsel do suggest this man intended only (as Hammer said in his incriminating statement) "to . . . scare the hell out of somebody". Counsel have successfully asked us, however, to ignore Hammer's incriminating statement. Moreover, even if Hammer's explanation of intent were properly in evidence, no rule of law would compel the trier of fact to accept it.

We should not belabor this point further. The facts compel the conclusion that entry into a dwelling with intent to commit rape was sufficiently proved. The evidence that rape was not consummated does not negate original intent to rape. This evidence can be properly interpreted as showing only that Hammer's plan was abandoned.

We hold that the evidence, exclusive of Hammer's incriminating statement, was sufficient to sustain his conviction.

The judgment is reversed and the case remanded for a new trial because Hammer's incriminating statement was admitted in evidence despite the uncontradicted evidence concerning a threat made by chief Peach.

*Reversed and remanded.*

EGGLESTON, C. J., and I'ANSON, J., concur in result.

SPRATLEY, J., concurs in result for reasons set forth in a separate opinion.

CARRICO, J., dissents for reasons set forth in a separate opinion.

CARRICO, J., dissenting.

I dissent for the reasons assigned in my dissenting opinion in Record No. 6154.