# Richmond

JAMES JOHNNIE MATHEWS v. COMMONWEALTH OF VIRGINIA.

March 6, 1967.

Record No. 6437.

Present, All the Justices.

*Thomas O. Lawson* for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

I'ANSON, J., delivered the opinion of the court.

James J. Mathews was indicted by a grand jury on a charge of robbery by violence to the person and by threat of firearms. He was tried by a jury, found guilty, and his punishment was fixed at confinement in the State penitentiary for a period of twenty years. The trial court entered judgment on the jury's verdict and sentenced Mathews accordingly. We granted Mathews a writ of error.

Mathews contends that the trial court erred (1) in employing an incorrect procedure to determine the voluntariness of his written confession; and (2) in admitting the confession in evidence, because (a) he was not advised of his rights to remain silent and to have the assistance of counsel; (b) it was induced by promises of leniency, and (c) under the facts and circumstances of this case the confession was involuntary.

The evidence shows that around 5:15 a.m., on April 7, 1965, Mathews and James Williams entered the office of the Travelers' Motel, located in Fairfax county, and inquired of John C. Stutz, who was on duty as night clerk, how to get back on interstate route 95.

Stutz testified that when the men did not seem to understand his directions, he suggested that they go outside so he could show them. When Stutz came from behind his desk, Williams stuck a revolver in his stomach and told him to back up. Williams forced him through a door into the hallway behind the desk by holding the revolver in his back. Stutz said that he glanced over his shoulder several times and saw Mathews pick up a cigar box containing $5.00 in change and go into the cash drawer. Williams kept telling Mathews to hurry and asking him if he had gotten the money.

Before leaving the premises, Williams shoved Stutz down the basement steps. When Stutz returned to the office, he found that $71 in currency had been removed from the cash drawer and the

cigar box containing money had been taken. His wallet, containing $75, which he had placed on a shelf behind the desk, had also been taken.

Shortly after midnight on April 8, 1965, Mathews, Williams and two other men were arrested and charged with an armed robbery committed in Nashville, North Carolina. During the course of the investigation of this robbery, Mathews told Sheriff Womble, of Nash County, North Carolina, that he was also involved in the Fairfax county motel robbery. The Fairfax County Police Department was notified, and Detective Baker and Officer King went to Nashville to talk with Mathews, who made a written confession of his participation in the Fairfax robbery.

Evidence on the question of the voluntariness of the written confession and its admissibility at the trial was heard out of the presence of the jury. At the outset of the hearing, the trial judge stated, "My understanding of it is I will make a determination as to whether the statement is *prima facie* voluntary. The jury does still have to find * * * that it was voluntary and my only finding is to determine whether it should go to them at all." However he then said, "I have to be satisfied it is voluntary."

Baker testified that he first saw Mathews in jail in Nashville, North Carolina, on the night of April 16, 1965, and that Sheriff Womble and Officer King were with him at the time. Baker said Sheriff Womble advised Mathews and the other three men of their constitutional rights and made no promises of leniency. While they were all present Womble stated that in investigating the North Carolina robbery Mathews had admitted his participation in the Fairfax county robbery. Mathews then stated that what the sheriff had said relating to the Fairfax robbery was correct.

The next morning, April 17, Baker talked with the four prisoners separately in the presence of Sheriff Womble and Officer King. Baker said he advised Mathews that he could remain silent; that anything he said could and probably would be used against him in court; and that he was entitled to counsel before making any statement. He also said that neither he, Sheriff Womble, nor King made any promises of leniency to Mathews, and that Mathews freely told of his participation in the Fairfax robbery. Baker reduced to writing the statement made by Mathews, and Mathews signed it after reading it aloud. The confession signed by Mathews also states that he was advised of all of his constitutional rights and that no promises of leniency were made to him.

After Baker's testimony and argument of counsel the trial judge said, "I am satisfied that the statement was voluntary and it will be admitted in evidence."

Mathews then testified regarding the voluntariness of his confession. He said that he was arrested a few minutes after midnight on April 8, 1965, very shortly after the Nashville robbery was committed. The following morning he told Sheriff Womble about his participation in the North Carolina and Fairfax county robberies after the sheriff told him that it would go easier for him if he cooperated. Mathews said that when Sheriff Womble, Baker and King saw him in jail on the night of April 16, the sheriff did not tell him his constitutional rights, and that he did not admit participating in the Fairfax robbery. Before giving the oral and written statements to Baker on the morning of April 17, the sheriff again told him it would go easier for him if he cooperated, and because of this inducement he signed the confession. He denied that Baker advised him of his constitutional rights and that he read the statement aloud before signing it.

After hearing Mathews' testimony the trial judge adhered to his former ruling that the statement was voluntary and admissible in evidence, and the jury was recalled. Detective Baker explained to the jury the circumstances under which he had obtained the confession from Mathews, and the statement was introduced in evidence.

Sheriff Womble was not present and thus did not testify at the trial.

Mathews first contends that the trial court did not employ the correct procedure in determining the voluntariness of his confession.

Before 1964, state and federal courts were fairly evenly divided in their choice among three procedures by which the determination of voluntariness of confessions was made in the trial court; namely, the Wigmore rule, the New York rule, and the Massachusetts rule. *Developments in the Law—Confessions*, 79 Harv. L. Rev. 938, 1058-1060 (1966).

The law in this State relating to the respective roles of the court and jury with regard to confessions has long been settled. Under the Wigmore rule, which is followed in Virginia, the trial judge hears evidence on behalf of the prosecution and the defendant out of the presence of the jury and rules on the voluntariness of a confession for the purpose of determining whether it is admissible. The jury then considers voluntariness only insofar as it affects the weight or

credibility of the confession. *Reid* v. *Commonwealth*, 206 Va. 464, 467, 144 S. E. 2d 310, 312 (1965); *McCoy* v. *Commonwealth*, 206 Va. 470, 475-477, 144 S. E. 2d 303, 308, 309 (1965); *Upshur* v. *Commonwealth*, 170 Va. 649, 655, 197 S. E. 435, 437 (1938); *Noe* v. *Commonwealth*, 207 Va. 849, 852, 153 S. E. 2d 248, 250, this day decided; 7 Mich. Jur., Evidence, § 229, pp. 608, 609.

Under the New York rule the trial judge makes a preliminary determination regarding the voluntariness of a confession offered by the prosecution. If under no circumstances could the confession be deemed voluntary, the trial judge excludes it; however, if the evidence presents a factual conflict as to voluntariness over which reasonable men could differ, the trial judge leaves to the jury, under proper instructions, the ultimate determination of voluntariness. In *Jackson* v. *Denno*, 378 U. S. 368, 84 S. Ct. 1774, 12 L. ed. 2d 908, 1 A. L. R. 3d 1205 (1964), the United States Supreme Court held that the New York procedure was constitutionally defective in that it did not insure a reliable determination of voluntariness. See the recent case of *Sims* v. *Georgia*, 385 U.S. 538, 87 S. Ct. 639, 17 L. ed. 2d 593 (1967).

In the recent case of *McCoy* v. *Commonwealth*, *supra*, 206 Va. at 477, 144 S. E. 2d at 309, Mr. Justice Carrico pointed out that the Wigmore rule, which has long been followed in Virginia, provides a "reliable determination on the issue of voluntariness," as required by the *Jackson* decision, and avoids the defects the Supreme Court found in the New York procedure.

Mathews argues that in determining the admissibility of the written statement he gave to Detective Baker on April 17, 1965, the trial court applied the New York rule, rejected in *Jackson*, rather than the Wigmore rule. In support of his contention he relies on the first quoted statement of the trial judge made at the outset of the hearing, and the language of instruction "O", which told the jury that if they did not find that the confession was voluntary, they were to give it no weight.

While the trial judge's statement at the beginning of the hearing that he would determine whether the statement was prima facie voluntary and the jury would still have to find that it was voluntary may suggest that he was applying the New York rule, he qualified the statement by saying, "I have to be satisfied it is voluntary." Moreover his subsequent rulings make it clear that he recognized that under the Virginia rule he had to decide the question of voluntariness for purpose of admissibility. At the conclusion of Baker's testimony

he said, "I am satisfied that the statement was voluntary, and it will be admitted in evidence"; and again after Mathews testified, the trial judge said, "I adhere to my original ruling." The court's order of June 14, 1965, also recites that "the court ruled that the statement was voluntarily made and would be admitted into evidence." In the light of the statements of the trial judge that he must be satisfied that the confession was voluntarily made before admitting it in evidence and that he was satisfied that it was voluntary, instruction "O", granted at the request of Mathews, does not show that the New York rule was followed.

Mathews next says that the trial court erred as a matter of law in concluding that the confession was voluntary. He first argues that his written statement was inadmissible because he had not been advised of his rights to remain silent and to have assistance of counsel when he made the confession to Detective Baker in the presence of Sheriff Womble.

The only evidence before the trial court on this point was the conflicting testimony of Mathews and Detective Baker. Baker testified that Mathews was advised of his rights to remain silent and to have assistance of counsel before making any statement. Since the evidence presented a factual issue on conflicting evidence, the trial judge was justified in accepting the testimony of Baker that Mathews was advised of his rights to remain silent and to have assistance of counsel. *Hammer* v. *Commonwealth*, 207 Va. 135, 147, 148 S. E. 2d 878, 882 (1966).

Mathews further argues that since the Commonwealth did not prove that the oral confession made to Sheriff Womble on April 8, 1965, was not induced by promises of leniency, it follows that the subsequent written confession was involuntary.

In *Thompson* v. *Commonwealth*, 61 Va. (20 Gratt.) 724, 730, 731 (1870), the first of two confessions was held involuntary. There it was said that prima facie the undue influence which induced the first confession was deemed to continue. However, the court also said that the presumption may be overcome by strong and clear evidence that a subsequent confession was made when the mind of the accused was free from the influence which induced the initial confession. Among the factors which may indicate that the influence which induced a first confession has been dispelled are the length of time intervening and a proper warning of the consequences of another confession.

It is not necessary for us to decide whether or not the Common-

wealth established that the initial confession made to Sheriff Womble was voluntary. The factors mentioned in *Thompson* which may overcome the presumption that the influence inducing the initial confession continued at the time of a subsequent confession are present here. More than eight days had elapsed between the first confession to Sheriff Womble and the subsequent oral and written confessions to Detective Baker. There was also evidence that he was advised in detail of his constitutional rights before freely confessing to Baker his participation in the Fairfax robbery. Moreover, it is apparent that Sheriff Womble knew nothing about the Fairfax robbery until Mathews told him in the course of his investigation of the Nashville robbery. Hence we hold that the trial court was justified in holding under the evidence that the initial influence, if it did exist, had been dispelled before the oral and written confessions were made to Baker.

Mathews also says that, even apart from the question of whether the influence which induced the first confession continued at the time of the subsequent written confession to Baker, the Commonwealth did not establish that Sheriff Womble, who was present when the written confession was made to Baker but did not testify, made no promises of leniency at that time.

He relies on the recent cases of *Hammer v. Commonwealth, supra*; 207 Va. 159, 148 S. E. 2d 892; 207 Va. 165, 148 S. E. 2d 896; 207 Va. 170, 148 S. E. 2d 899 (1966). There we reversed Hammer's four convictions because of his uncontradicted testimony that the chief of police required him to make an incriminating statement as a condition to the chief's promise to refrain from prosecuting members of his family.

The present case is clearly distinguishable from the *Hammer* cases. There Hammer's testimony concerning a threat by the police chief, who did not testify, was uncontroverted. In this case Baker testified that neither he nor Sheriff Womble made any promises to Mathews to obtain the oral confession on the night of April 16 and the written confession on the next morning. Since there was a controverted issue of fact, we cannot say that the trial judge erred in accepting that version of the evidence which proved no promise of leniency was made to Mathews. *McCoy v. Commonwealth, supra*, 206 Va. at 474, 144 S. E. 2d at 307. Indeed, Mathews' written confession specifically states that no promises, threats or inducements were made to him before he made the written confession.

Finally, Mathews says that under the facts and circumstances here his written confession was involuntary. He argues that this case

is controlled by *Cooper* v. *Commonwealth*, 205 Va. 883, 140 S. E. 2d 688 (1965), where the conviction was reversed although Cooper was advised of his rights before being examined, no threats or inducements were made to him and he had not asked to consult with his counsel.

Cooper had been indicted for the rape of a four-year-old girl and incarcerated pending trial. Without notifying his attorney, the police took him to the sheriff's office and played a tape recording of the little girl telling her mother what Cooper had done. When Cooper became upset, the police officer asked him why he had done it. At this point Cooper started to cry and said, "I do not know why." Thus the police, who had been unable to get a confession from Cooper from prior questioning, subjected him to an emotional stress for the purpose of stimulating an incriminating reaction.

The opinion in *Cooper*, however, made clear that each case must be judged on its own particular facts. The present case is clearly distinguishable on the facts from *Cooper*. Cooper had consistently denied his guilt when interrogated on several earlier occasions. Here, on the other hand, Mathews informed Sheriff Womble of his participation in the Fairfax county robbery before the sheriff had any way of knowing that the offenses had occurred. More than eight days later he freely gave a narrative description of the Fairfax robbery after having been advised of his rights to remain silent and to have assistance of counsel before making any statement. See *Shumate* v. *Commonwealth*, 207 Va. 877, 153 S. E. 2d 243, decided today.

For the reasons stated, the judgment is

*Affirmed.*