## Richmond

JAMES HARKINS NOE V. COMMONWEALTH OF VIRGINIA.

March 6, 1967.

Record No. 6385.

Present, Spratley, Buchanan, Snead, I'Anson, Carrico, and Gordon, JJ.

*W. Raymond Minnix,* for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

James Harkins Noe was at the January, 1957, term of the Circuit Court of Bedford County, indicted by the grand jury for statutory burglary. Section 18-159, Code of Virginia, 1950, now § 18.1-86, 1960 Repl. Vol. He was tried on January 2, 1957, convicted, and sentenced to serve 12 years in the penitentiary. On November 20, 1963, his petition for a writ of *habeas corpus* was denied by the Circuit Court of Bedford County. We refused an appeal.

On July 6, 1965, the United States District Court for the Eastern

District of Virginia, Richmond Division, ordered that Noe be released from custody by reason of his conviction of January 2, 1957; but stayed the enforcement of the order for 90 days from the date thereof to permit the Commonwealth to retry Noe, if it should be so advised.

The Commonwealth elected to retry Noe, and on September 7, 1965, counsel was appointed by the Circuit Court of Bedford County to represent him on his retrial. The case was set to be heard on September 18, 1965. On the latter date, Noe was arraigned, and entered a plea of not guilty. At his request a continuance was granted to October 2, 1965. On the latter date, he was again arraigned, and, upon his plea of not guilty, was tried the second time. The jury returned a verdict finding him guilty, and fixed his punishment at 15 years in the penitentiary. Through the court-assigned counsel who defended him in the court below, he has perfected this appeal.

There are a number of assignments of error; but the critical questions in the case are: (1) whether the trial court erred in refusing to hear evidence of the defendant on the voluntariness of a purported confession before ruling in the presence of the jury that it was voluntary; and (2) in stating in the presence of the jury that evidence already heard indicated that the confession was "a fully voluntary statement," and as such admissible in evidence.

In view of the above questions, it is not necessary to set out in detail the evidence introduced by the Commonwealth at the second trial prior to the time the above issues arose.

On the morning of December 21, 1956, R. T. Mitchell, then Sheriff of Bedford County, Virginia, began an investigation of an alleged burglary at Coleman Falls in his county. He found that a storeroom and dwelling room attached thereto had been broken and entered in the nighttime of December 21, 1956; that a safe in the storeroom had been moved, its door had been "punched open" and "approximately" $2,000.00 removed therefrom; and that a "sledge hammer," a "wrecking bar" and a "tire tool" were located in the "neighborhood" of the safe. He later found a footprint outside the door of the dwelling room, occupied by W. C. Fulks, which matched a print of the shoes worn by Noe.

Noe was arrested by two police officers in Huntington, West Virginia, on December 23, 1956, on a charge of being drunk. As a result of information given the police officers, Noe and his uncle, Wayne Lycans, who had accompanied him in an automobile to Huntington,

were confined in jail. Their automobile was searched and a "gun" was found in the glove compartment, and later a search revealed a shotgun and a money bag in the trunk of the car.

On December 26, 1956, Noe waived extradition, was given into the custody of Sheriff Mitchell, and returned by the latter on that day to Bedford County, Virginia. On the return trip, Noe identified the shotgun found in the trunk of the automobile as one that had been taken from the dwelling room of Fulks. He also identified the other "gun" heretofore referred to as one which had been taken from the storeroom at Coleman Falls.

Sheriff Mitchell said that he did not interrogate Noe, or make any threats against him; but that the latter freely and voluntarily insisted upon making a confession relating to the parts played by him and Lycans in connection with the burglary at Coleman Falls, notwithstanding Mitchell's warning that he did not have to make a statement, that he had the right to have the aid of a lawyer, and that if he could not afford one, the court would appoint one to defend him. Mitchell said the defendant told him "You've got me cold and I want to go back and get this thing over with;" and that "he was afraid of Lycans; he didn't want to face Lycans; and was afraid he (Lycans) would kill him." These statements were not taken down in writing.

On December 27, 1956, Noe was taken to the office of the Commonwealth's Attorney of Bedford County for the purpose of making a confession. Present at that conference were the Attorney for the Commonwealth, L. F. Payne of the Virginia State Police Force, Sheriff Mitchell, and Barbara Overstreet, secretary to the Attorney for the Commonwealth. There was on attorney present representing Noe, and Noe had not talked to an attorney since his arrest on December 23rd.

On October 2, 1965, as a witness in the trial, Mitchell was asked by the Commonwealth's Attorney: "Please tell the Court and jury just what statement, as best you can recall it, what Noe did say there," referring to the conference in the office of the Commonwealth's Attorney. Immediately counsel for Noe objected to the introduction of the statement on the grounds that his client was not represented by counsel at the time the statement was given, "even though he had asked for assistance of counsel and friends;" and that, moreover, the statement was not a voluntary one. The objections were overruled. Thereupon counsel for Noe moved "that the Court hear evidence on

whether or not this was a voluntary confession before it should be submitted into evidence."

All of this took place before the jury, and the court, with the jury still present, said:

"Mr. Minnix, the Court has already heard such evidence *as well as* —in the presence of the Jury. And the Court is of the opinion at this time that all evidence that I have heard indicates that this was a fully voluntary statement and it would do no—serve no purpose to hear further evidence on it. I overrule the objection and I rule that this testimony is admissible."

Defendant objected, and noted an exception to the ruling in each instance. Thereupon, Mitchell proceeded to tell the jury his recollection of what Noe said at the conference with the Commonwealth's Attorney.

We agree with Noe that the trial court committed prejudicial and reversible error in ruling, in the presence of the jury, that the alleged confession was admissible in evidence without first hearing the testimony of Noe as to the voluntariness of the confession, and in commenting also in the presence of the jury upon the weight and sufficiency of the evidence already heard on the question of the voluntariness of the confession.

The respective roles of the court and jury with regard to confessions have long been settled in this Commonwealth. 7 Mich. Jur., Evidence, § 229, pages 608, 609.

In *Upshur* v. *Commonwealth*, 170 Va. 649, 655, 197 S. E. 435, 437, we said:

"Thus the admissibility of a confession is a question for the court, and not for the jury. The court does not vouch for the confession, but admits it to the jury to be considered and weighed like other evidence. Its weight, its value and its sufficiency is a question for the jury.

" ' * * * The jury are to weigh confessions like other evidence and believe or disbelieve them, in whole or in part, as reason may decide; and if, from opposing evidence or the confession itself, facts appear which are sufficient to satisfy a rational mind that a part is not true, it ought to be rejected.' *Earhart* v. *Commonwealth*, 9 Leigh (36 Va.) 671; *Brown* v. *Commonwealth*, 9 Leigh (36 Va.) 633, 33 Am. Dec. 263; *Flick* v. *Commonwealth*, 97 Va. 766, 34 S. E. 39."

In *Reid* v. *Commonwealth*, 206 Va. 464, 467, 144 S. E. 2d 310, 312, we said:

"In this State the determination of the admissibility of a confession

is the function of the court. Its credibility, weight and value are for the jury. It is the duty of the court before admitting in evidence a confession to determine from the evidence, in the absence of the jury, whether it was freely and voluntarily made. * * *

"In determining whether a confession is voluntary the court should hear and consider all of the evidence on the subject—that offered by the accused as well as that offered by the prosecution. *Omohundro v. Commonwealth*, 138 Va. 854, 863, 121 S.E. 908; 23 C. J. S., Criminal Law, § 836, p. 249; Id., § 838, p. 265 ff."

In *McCoy v. Commonwealth*, 206 Va. 470, 475, 144 S. E. 2d 303, 309, we approved the above statement from *Upshur v. Commonwealth, supra*, and after discussing our rule and the rules in other jurisdictions, we said on page 477 of 206 Va. that:

"We hold our rule up against the declared weaknesses of the New York rule and the obvious confusion which would result from the application of the Massachusetts or humane rule, and find our practice not wanting. The Wigmore or orthodox rule is firmly embedded in our system of jurisprudence. It is founded upon sound reasons of fairness, order and reliability. Under such circumstances, a change in the rule is not justified."

Cf. *Mathews v. Commonwealth*, 207 Va. 915, 153 S. E. 2d 238, this day decided.

Here, the test of the admissibility of the purported confession of guilt was whether it was made voluntarily. In his plea of not guilty, and in his grounds for the exclusion of the confession from the evidence, Noe denied that it was voluntary. Consequently, the court should have heard, in the absence of a jury, his testimony and explanation before determining the issue of its admissibility. Objection to the ruling of the court was timely and properly made, and for the error the judgment appealed from must be reversed, and a new trial awarded.

It is not necessary, under the circumstances, that we consider any remaining assignments of error. Questions relative thereto are not likely to arise on a new trial.

For his services, the court-assigned counsel is allowed a fee of $300.00, in addition to any other expenses incurred by him in prosecuting this appeal.

*Reversed and remanded.*