### Richmond

DONALD EDWARD TIPTON

V.

COMMONWEALTH OF VIRGINIA

October 15, 1982.

Record No. 811639.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ.

*Edward James Woodhouse, Jr.- (Terwilliger & Woodhouse,* on briefs), for appellant.

*Thomas D. Bagwell, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

The defendant, Donald Edward Tipton, was indicted for robbing an employee of the Southgate Market in Montgomery County and for using a firearm in the commission of the robbery. Tried by a jury, the defendant was convicted of both offenses and sentenced to a total of ten years in the penitentiary.

The Southgate robbery occurred on the evening of December 14, 1980. The defendant was arrested the same night. The next day, he confessed to the robbery in a statement made to a Montgomery County investigator.

In a pretrial hearing and at trial, the defendant sought to suppress his confession on the ground it was coerced. The trial court, however, rejected the evidence of coercion proffered by the defendant and admitted the confession. The defendant then moved that the evidence "be allowed to come in in front of the jury." The court denied this motion. The principal question on appeal is

whether the court erred in refusing to admit the proffered evidence.[1]

The evidence proffered by the defense[2] would have shown that, approximately three weeks before the Southgate robbery, the defendant was arrested in Floyd County on an unrelated charge of larceny of a truck belonging to William Vaughan. On November 22, the defendant admitted the truck theft in a statement made to Floyd County Deputy Sheriff Yopp. Present during the taking of this statement were the defendant's fiancée, Vickie Ramey,[3] and his father. Corroborated by Vickie and his father, the defendant claimed in the proffer that he made the admission because Yopp stated "he would keep Vickie's name out of it" if the defendant "said that [he] did it."[4]

On November 25, the defendant made the further admission to Yopp that he was responsible for damaging the Vaughan truck, an admission he had refused to make on November 22. Vickie was present when the November 25 admission was made; she heard Yopp say he would "press charges" against her if the defendant did not admit responsibility for the damage. A handwritten notation made by Yopp of the November 25 conversation indicates that Vickie also implicated herself in damaging the truck.

The proffer continued with the circumstances surrounding the defendant's confession to the Southgate robbery. In the proffer, he denied any implication in the robbery. He admitted, however, that, on the evening of December 14, he stole his father's truck in Floyd County and drove it to Richlands in Tazewell County to see Vickie. He was apprehended before reaching her home. He was

---

[1] The defendant also contends that the trial court erred in admitting certain identification evidence. We have considered the defendant's arguments and find no error in the court's ruling in this respect.

[2] The proffer was in the form of a transcript of a suppression hearing in the Circuit Court of the City of Radford involving a charge against the defendant for a robbery occurring in Radford the same night as the Southgate robbery.

[3] The record shows that Vickie was pregnant by the defendant at the time of the November 22 statement and that he was then aware of her condition. The pair had married by the time of trial.

[4] Yopp's testimony appears in the proffer. His position with respect to the quoted statement is ambivalent. On brief, the Attorney General says of Yopp's testimony on the point:

Deputy Yopp . . . denied any threats made to the defendant concerning charging Vickie Tipton about the larceny of the [Vaughan] truck. . . . According to Yopp, it was the defendant's idea for Yopp to state in the presence of Vickie Tipton, the defendant's father and the defendant that he would leave Vickie out of the [Vaughan] larceny case if the defendant confessed to the larceny.

returned to Floyd County and, on the morning of December 15, was interrogated by Deputy Yopp in the county jail.

The deputy questioned the defendant concerning both the theft of the father's truck and the Southgate robbery. The defendant admitted stealing the truck. When he denied committing the robbery, Yopp asked him how much he loved Vickie. The defendant replied he loved her "enough to die for her." Yopp then handed the defendant "a piece of paper" and told him to acknowledge its contents and he, Yopp, "would leave Vickie out of it."

According to the defendant, the "piece of paper" contained a statement admitting that he committed the Southgate robbery. After reading the statement, the defendant reiterated his innocence of the crime. In response, Yopp said to the defendant, "Well you said you loved Vickie enough to die for her, so you might as well go ahead and read it or I'll put her in jail for a long time." The defendant read aloud the statement contained in Yopp's paper, and the statement was recorded. When asked in the proffer why he admitted the Southgate robbery when he "actually didn't do it," the defendant replied, "Because [Yopp] was threatening . . . he would put Vickie in jail."[5]

Following the recording of the statement, Yopp told the defendant that an investigator would come from Montgomery County to interrogate the defendant concerning the Southgate robbery and that he should "tell [the investigator] that [he] did it." When the Montgomery investigator arrived, the defendant made a full confession to him of the Southgate robbery. The confession made to the investigator was admitted in the trial below over the defendant's objection.[6]

In rejecting the proffered evidence, the trial court took the position that any threats concerning the November Vaughan truck larceny in Floyd County were irrelevant to the question of the voluntariness of the defendant's confession to the December robbery in Montgomery County. The Attorney General supports this position. In his brief, the Attorney General states:

---

[5] Yopp denied making any threats to the defendant during the December interrogation.

[6] The Attorney General argues that, when this statement was offered in evidence, defense counsel said he did not have "any objections" to its admission. It is clear, however, that defense counsel's indication of "no objection" referred to a "Statement of Miranda Rights" and a "Waiver of Rights" the defendant had signed and not to the confession.

> There was no . . . proffer connecting the prior threats in the larceny case to the case at bar. The defendant should have adduced evidence as to his state of mind at the time that he made the statements to Deputy Yopp. Without evidence from the defendant that the Deputy reasserted threats at the time of [the defendant's] confession, the prior larceny incident was irrelevant to the issues before the Court.

We disagree with the Attorney General. We believe the proffered evidence made a prima facie showing that Deputy Yopp did reassert his threats at the time of the defendant's December confession and that, in his then state of mind, the defendant submitted to the threats and confessed to the Southgate robbery. Thus, there was sufficient connection between the November and December incidents to render the proffered evidence relevant to the question of the voluntariness of the defendant's December confession.

It is true that, in the proffer, Deputy Yopp is shown to have said in his December interrogation of the defendant that he would "put [Vickie] in jail for a long time" without specifying upon what basis she would be incarcerated. But, in the context of Yopp's continuing contacts with the defendant, it would not have been unreasonable for the defendant to believe that the threat had reference to Vickie's admitted part in the November Vaughan truck larceny. That incident was the only one in which Vickie was shown to have been implicated and, at the time the proffer was made in March, 1981, the question whether she would be charged with participating in this incident was still unresolved.[7]

With reference to the defendant's state of mind at the time of his December confession, he stated in the proffer that he admitted the Southgate robbery "[b]ecause [Yopp] was threatening . . . he would put Vickie in jail." And the defendant stated he responded to Yopp's direction "to tell [the Montgomery investigator] that [he] did it" by admitting the robbery to the investigator.

In Virginia, the question of the admissibility of a confession is decided by the court, but, once the confession is admitted into evidence, its weight is a matter for the jury to determine. *McCoy* v. *Commonwealth*, 206 Va. 470, 475-77, 144 S.E.2d 303, 308-09 (1965); *Upshur* v. *Commonwealth*, 170 Va. 649, 655, 197

---

[7] In the proffer, Yopp was asked whether Vickie had ever been charged with the Vaughan larceny. He replied, "Not yet."

S.E. 435, 437 (1938). Where the issue of admissibility turns upon voluntariness, the court should hear all pertinent evidence on the subject. *Noe* v. *Commonwealth,* 207 Va. 849, 853, 153 S.E.2d 248, 250-51 (1967); *Reid* v. *Commonwealth,* 206 Va. 464, 467, 144 S.E.2d 310, 312 (1965). As a corollary, if a confession is found voluntary by the court and admitted into evidence, the jury is entitled to hear the evidence concerning voluntariness in determining what weight the confession is due.

Of particular concern here, we have held that a confession may be involuntary and hence inadmissible when induced by threats to prosecute members of the confessor's family. *Hammer* v. *Commonwealth,* 207 Va. 135, 147-48, 148 S.E.2d 878, 885-86 (1966). We have held further that a "confession obtained by such methods as to make it involuntary renders subsequent confessions made while an accused is under the operation of the same influences also involuntary and inadmissible in evidence." *Bunting* v. *Commonwealth,* 208 Va. 309, 312, 157 S.E.2d 204, 207 (1967).

In *Hammer,* the threats to prosecute were directed against the accused's wife and his mother, father, and brother. Here, the alleged threats were aimed at one who was not the confessor's spouse or relative. This, however, is a distinction without a real difference; we have indicated that the threat rule may extend to a girlfriend of the accused. *Clark* v. *Commonwealth,* 220 Va. 201, 207-08, 257 S.E.2d 784, 788-89 (1979), *cert. denied,* 444 U.S. 1049 (1980). As the defendant's pregnant fiancée, Vickie is properly includable in the rule's application. The fact that she and the defendant were not married at the time of the alleged threats affects the weight and not the admissibility of the proffered evidence.

In *Bunting,* the influence that rendered the subsequent confession inadmissible stemmed from a coerced prior confession to the same crime. Here, the improper influence alleged by the defendant arose from a prior offense different from the crime involved in the confession at issue. This dissimilarity, however, does not render the *Bunting* rule inapplicable. Where, as here, the prior and subsequent events are connected rationally in an unbroken chain of circumstances, evidence of coercion continuing from the earlier to the later time should be admitted; again, a question of weight, and not admissibility, is involved.

We hold, therefore, that the trial court erred in rejecting the proffered evidence; hence, we will reverse the judgments of

conviction. Upon remand, the court shall admit the evidence in a pretrial hearing on the question of admissibility of the defendant's confession. If the court determines that the confession is voluntary and admissible, it shall also admit the evidence before the jury under appropriate instructions permitting the jury to determine the weight that should be given the confession.

*Reversed and remanded.*