**Herbert Levi FERGUSON, Appellant,**

v.

**F. C. BOYD, Appellee.**

**No. 76–2034.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 15, 1977.

Decided Oct. 11, 1977.

Rehearing En Banc Decided Dec. 27, 1977.

Barry Nakell, Chapel Hill, N.C. and Third Year Law Students Catherine Reid and Robert John White, for appellant.

Wilburn C. Dibling, Jr., Asst. Atty. Gen., of Virginia, Richmond, Va. (Andrew P. Miller, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellee.

* District Judge for the Southern District of West Virginia, Sitting by Designation.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and COPENHAVER, District Judge.*

PER CURIAM:

Petitioner, Herbert Levi Ferguson, brings this appeal challenging the validity of his conviction in state court on the ground that a statement made by him to the prosecutor and admitted as evidence at his trial was involuntary in that it was (1) coerced by psychological means and (2) induced by a promise that his girlfriend would be released if he confessed. Petitioner also contends that the statement was obtained without the necessary *Miranda*[1] warning and in violation of his right to counsel.

The statement having been entered as evidence at his trial in 1971, petitioner was convicted by the Circuit Court of the City of Buena Vista, Virginia, for breaking and entering with intent to commit larceny and was sentenced to prison for four years. Petitioner did not appeal. In 1972, he filed in state court a petition for habeas corpus. An evidentiary hearing was held in 1973 and his petition was denied. Petitioner then appealed to the Supreme Court of Virginia, which in 1974 affirmed the Circuit Court's denial of the petition, holding that because of his failure to appeal he lacked standing to raise the issues on habeas corpus. *Ferguson v. Superintendent of Virginia State Penitentiary*, 215 Va. 269, 208 S.E.2d 749 (1974).

In 1975, petitioner filed a habeas petition in the United States District Court for the Western District of Virginia. The Commonwealth filed a motion to dismiss and on June 3, 1975, the district court denied the petition. *Ferguson v. Boyd*, 397 F.Supp. 129 (W.D.Va.1975). This appeal then ensued.[2] We reverse.

I. The Undisputed Evidence

On July 29, 1971, shortly after midnight, Buena Vista city police officers noticed a

2. Petitioner's sentence has expired and he is now no longer in custody.

1965 Ford in the municipal parking lot occupied by a man in the driver's seat and a woman in the rear seat. Petitioner was standing beside the car. The officers then saw another man, Rosser Williams, in the middle of the street walking away from the Western Auto Store and toward the car with an armful of guns. As the officers ran to the scene, the petitioner entered the rear seat of the car. The officers found a pile of guns where petitioner had been standing in addition to the guns they took from the man who was crossing the street. All four persons, including Lionel Mosby who was in the driver's seat and petitioner's girlfriend, Juanita Wolfolk, who had been sitting in the rear of the car, were arrested.

At the jail, petitioner was informed of his constitutional rights by one of the arresting officers. Moreover, petitioner was already generally aware of those rights by virtue of previous entanglements with the law. Although petitioner had been drinking and was not entirely lucid, he advised the officers that he wanted a lawyer and refused to make any statement or answer any questions, even to the extent of revealing his name, without an attorney. However, petitioner did inform the arresting officers that he would tell them "all about it if . . . [they] would let the girl go."

Shortly thereafter, the Commonwealth Attorney arrived at the jail and interrogated petitioner for the avowed purpose of obtaining a confession. Notwithstanding petitioner's earlier request for an attorney, and in clear violation of *Miranda*, the prosecutor, along with a police officer, proceeded to ask petitioner "what he had done and the fact that he had gone in there and all this . . . ." Except for the exchange of "some right strong words" between the prosecutor and the petitioner, no additional statements were obtained from petitioner on the night of his arrest. Nevertheless, two things were then abundantly clear to the authorities: (1) petitioner wanted his girlfriend released, and (2) the case against the girlfriend was so "shaky" that it could only be pursued if she were implicated by one of the others.

The next day, instead of first taking the prisoners before the municipal court then sitting in Buena Vista for the purpose of setting bond and advising them of their right to counsel, as required by then Virginia law,[3] the authorities transported them some forty miles to the Augusta County Jail at Staunton. There the four were kept isolated from one another for six days until August 4, 1971, when Mosby, petitioner and his girlfriend were returned to Buena Vista for a court appearance at which bond was to be fixed and, for petitioner, counsel designated. During the six-day period of incarceration at Staunton, no effort was made to bring them before the court for the fixing of bond and the appointment of counsel as might have been done on either of the two occasions during that six-day period when the Buena Vista municipal court was in session.

The three were returned to Buena Vista by automobile and were accompanied by two police officers, including Police Chief Huffman. On the return trip, petitioner was seated next to his girlfriend from whom he had been separated for the past six days. Although the testimony is in sharp contrast as to whether the police officers or the petitioner initiated the conversation on the subject, it is conceded that the petitioner again offered on the return trip to make a statement in exchange for the release of the girl. One of the officers suggested that petitioner speak to the prosecutor. When they arrived at the courthouse some fifteen minutes prior to the convening of court, Chief Huffman promptly contacted the prosecutor and advised him

---

3. "Every person charged with the commission of a felony not free on bail or otherwise shall be brought before the judge of a court not of record on the first day on which such court sits after the person is charged. At this time, the judge shall inform the accused of his right to counsel and the amount of his bail. The accused shall be allowed a reasonable opportunity to employ counsel of his own choice or if appropriate, the statement of indigence provided for in § 19.1–241.3 of the Code shall be executed." Va. Code, § 19.1–241.2 (1975 Cum. Supp.) (repealed by 1975 Va. Acts, ch. 495, tit. 19.2).

that petitioner would make a statement in order to obtain the girl's release. The prosecutor then conversed with the petitioner in the presence of the officer and took his statement.[4] At that time, it was known by the prosecutor that the prime purpose of the court appearance was to enable the petitioner to confer with his attorney who had been selected the day before but who apparently was not to be formally appointed until the hearing that same morning. The prosecutor, who acknowledged at the habeas corpus hearing that he would surely have been thwarted in obtaining a confession from the petitioner once his attorney arrived to counsel him, received the confession in the few remaining minutes prior to the 10:00 a.m. hearing with the court.

The prosecutor acknowledges that he knew that the purpose of the confession by the petitioner was to obtain the release of the girl. He further concedes that his sole purpose as prosecutor was to obtain a confession implicating petitioner, not to absolve the girl. Indeed, he was aware that Williams had already exonerated the girl—a fact that had not been relayed to the petitioner. In this connection, it is interesting to observe that the authorities chose to leave Williams at the jail in Staunton when the other three were returned to Buena Vista.

## II. The Disputed Promise

It is unnecessary to resolve the disputed issue of whether a promise was made to the petitioner that his girlfriend would be released if he would confess. The petitioner insists that he was so promised. The prosecutor on the other hand, while acknowledging that he is not entirely certain as to whether a promise was made, states that he is under the impression that he made no promise. However, he does concede that the petitioner may have said, "If I tell you how this thing happened to prove to you that she didn't have anything to do with it, will she be released?" And the prosecutor

further concedes that he "may very well have said 'yes.'"

Even adopting the state's version, it is understandable that the petitioner might have been led to believe the girl would be released if he confessed. The prosecutor knew that release of the girl was uppermost in petitioner's mind. The prosecutor also knew that the petitioner had offered on the night of his arrest to confess if the authorities would agree to release the girl. When petitioner came to court on August 4th, the prosecutor was informed that petitioner would make a statement for the purpose of obtaining the girl's freedom. Indeed, at one point in his testimony, the prosecutor acknowledged that he was informed by Chief Huffman immediately upon petitioner's return to Buena Vista and just prior to the confession that the petitioner would make a statement if the prosecutor would agree to turn the girl loose. Under all the attendant circumstances, the prosecutor ought to have known that his agreement that he would release the girl if petitioner told him how it happened to prove to him that the girl had nothing to do with it might very well create the impression in petitioner's mind that the girl would be released if petitioner confessed. Viewed from the petitioner's perspective, it would not have been unreasonable for him to understand that a promise had been made. *Grades v. Boles*, 398 F.2d 409 (4th Cir. 1968).

Nevertheless, we do not rest our decision on the ground that an improper promise was made in order to induce from petitioner an involuntary confession. The state court judge in the habeas hearing necessarily resolved this credibility issue against the petitioner and we accept his finding thereon. For the same reason, we disregard petitioner's disputed contention that, in violation of his right to counsel, the police officers initiated the conversation on the August 4th return trip that led to his confession without benefit of a renewed *Miranda* warning

4. No further *Miranda* warning was given beyond that conveyed to the petitioner on the night of his arrest. The court below concluded

that the confession was "both voluntary and spontaneous." 397 F.Supp. at 133.

just prior to the hearing at which counsel was to have been appointed for him.

### III. The Coercion of the Confession

■ We conclude that the finding of the state court judge that the confession was voluntary is not fairly supported by the record. 28 U.S.C. § 2254(d).[5] Our conclusion is reached on the basis of the undisputed evidence derived in a fully developed habeas hearing before the Circuit Court of the City of Buena Vista, Virginia. No specific findings of fact or separate conclusions of law were made by that court, which merely stated the mixed finding of fact and law that the confession "was not coerced or induced but was a voluntary statement and hence was admissible." Inasmuch as the evidence before the state court was adopted by the court below without further evidentiary hearing, the record in the state court reflects all of the evidence before us for consideration.

■ It has long been recognized that involuntary confessions may be exacted as a result of mental coercion as well as physical abuse. As the Supreme Court stated in *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 279, 4 L.Ed.2d 242 (1960):

> A number of cases have demonstrated, if demonstration were needed, that the efficiency of the rack and thumbscrew can be matched, given the proper subject, by more sophisticated modes of "persuasion."

The ultimate question is whether the pressure, in whatever form, was sufficient to cause the petitioner's will to be overborne and his capacity for self-determination to be critically impaired. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). Inasmuch as the degree of pressure necessary to crush one's will varies with the individual and the circumstances of the arrest and detention, a finding of coercion and involuntariness must be based upon a careful consideration of the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In this case it is apparent that the prosecutor and police went to extraordinary lengths to extract from petitioner a confession by psychological means. They learned on the night of petitioner's arrest of his overriding concern for his girlfriend's release. This discovery set the stage for a week's exploitation of the relationship between the petitioner and his girlfriend which culminated in a successful race by the prosecutor to obtain the confession just moments prior to the courtroom arrival of petitioner's counsel. Throughout the course of the week's events, petitioner's girlfriend was separated from her two infant children, ages two and four, and held without bond, even though the case against her was admittedly "shaky" from the outset.

On the night of his arrest, the petitioner himself was subjected to interrogation despite his request for counsel and notwithstanding his assertion of his right to remain silent. This fundamental *Miranda* right was patently violated by no less than the county's leading legal officer, the Commonwealth Attorney, who found it necessary to visit the petitioner in the jailhouse in the early morning hours following his midnight

---

5. 28 U.S.C. § 2254(d) (1976) provides in relevant part as follows:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, . . .

. . . . .

(8) . . . unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record . . . . .

arrest. The prosecutor interrogated the petitioner even though petitioner had been drinking and was not entirely lucid. His inquiry was accompanied by "some right strong words" and took place for the acknowledged purpose of obtaining a confession.

■ Petitioner's reward for thwarting this improper exercise of police power was soon in coming. The next morning he was shipped, along with his girlfriend and two male companions, to the Augusta County Jail at Staunton, some forty miles away. This served to ignore the directive of the Virginia statute under which petitioner and his girlfriend ought to have been brought before a judge of the Buena Vista municipal court then in session for the purpose of fixing bond and informing them of their right to counsel.[6] Had such been done, the girlfriend, if not freed outright, would doubtless have been released on a modest bond so that she might return home to care for her infant children. Petitioner would also have been enabled to renew before the court his request for appointment of counsel. Such a course, however, would have deprived the authorities of their hostage— the girlfriend.[7] It would likewise have resulted in the early appointment of counsel whom the prosecutor knew would have "sense enough to stop" petitioner from confessing.

So it was that the petitioner and his compatriots were dispatched to Staunton where they were to languish in jail throughout yet another session of the Buena Vista municipal court in contravention of the same Virginia statute. For six days, the four remained in the Augusta County Jail isolated from one another. For six days and six nights, petitioner had little to do but brood over the jailing of his girlfriend with whom he had lived for the past year. His feelings of guilt respecting the involvement of his girlfriend were magnified by his concern for the safety and welfare of her children. This was especially the case with the two-year-old son whom the petitioner had personally taken to the hospital at least a dozen times that year.

When the authorities determined that the petitioner and his girlfriend had been detained for hearing long enough, they were returned to Buena Vista. On the return trip, petitioner and the girlfriend were seated next to each other in the rear seat of the police officer's car where they were, at last, able to engage in a whispered conversation. Mosby accompanied them. Cleverly enough, Williams, who unknown to the others had made a statement absolving the girlfriend, was left behind. It wouldn't do, of course, for the petitioner to learn that someone else had already cleared the girl. Upon arriving at Buena Vista, the police officers immediately notified the prosecutor of petitioner's proposal to make a statement. The prosecutor, fully aware that petitioner's counsel would arrive within minutes, moved at once to obtain petitioner's confession before counsel could consider advising his client against it. Shortly thereafter, the girlfriend, as well as Mosby, were released on minimal bonds and subsequently freed altogether.

From this sequence of events, it is clear that petitioner's confession resulted from improper conduct on the part of the local

---

6. Va.Code § 19.1–241.2. Violation of the statute, however, does not automatically afford the petitioner relief but is merely one circumstance along with others to be considered in evaluating the voluntariness of the confession. *Davis v. North Carolina*, 339 F.2d 770, 777 (4th Cir. 1964).

7. It is recognized that a confession is not *per se* invalid merely because the confessor implicates himself in an effort to secure the best possible disposition of a charge pending against a relative or friend. *United States v. McShane*, 462 F.2d 5, 7–8 (9th Cir. 1972); *United States v.*

*Stegmaier*, 397 F.Supp. 611, 618 (E.D.Pa.1975). Rather, it must also be shown that the friend or relative was improperly detained or threatened as the means whereby the confession was involuntarily exacted. To the extent *United States v. Reese*, 351 F.Supp. 719, 721 (W.D.Pa. 1972) holds that the detention of a live-in girlfriend does not have the same legal consequences as the detention of a wife or relative, we respectfully disagree. The determination should be based upon the impact of the circumstances rather than the legal relationship of the parties.

authorities. The totality of the circumstances makes it abundantly plain that petitioner's acknowledgement of guilt was involuntarily exacted as a consequence of undue psychological coercion and calculated pressures brought to bear through clever manipulation of the petitioner, his girlfriend and his male companions.

Following argument of this case, the United States Supreme Court handed down its decision in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), holding that the failure to raise a federal constitutional issue in a state court trial precludes its use in a subsequent federal habeas proceeding if a state foreclosure rule (such as that applied in this case in *Ferguson v. Superintendent of Virginia State Penitentiary*, 215 Va. 269, 208 S.E.2d 749 [1974]) prohibits raising the federal claim for the first time on appeal.

Without undertaking to consider the full scope of *Sykes* at this time, we hold it inapplicable to bar this petitioner who did raise the issue dealt with herein at trial but then proceeded by state habeas instead of appeal, especially inasmuch as the record does not indicate a deliberate by-pass of the appellate route for tactical reasons. *Fay v. Noia*, 372 U.S. 391, 438–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Sykes*, 433 U.S. at 88, 97 S.Ct. at 2507 n. 12.

The judgment of the district court is reversed and this case is remanded for the issuance of a writ of habeas corpus unless, within a reasonable time, the Commonwealth should retry the petitioner without the use of his confession.

On Request For Rehearing, En Banc

An evenly-divided court having voted to deny rehearing en banc upon request made pursuant to Federal Rule of Appellate Procedure 35;

It is ADJUDGED and ORDERED that rehearing en banc is denied.

DONALD RUSSELL, WIDENER and K. K. HALL, Circuit Judges, would grant rehearing en banc.