883 F.2d 68
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ray Charles DEGRAFFENREID, Petitioner-Appellant,
v.
Kenneth D. MCKELLAR, Warden, KCI, William D. Leeke,
Commissioner, SCDC, T. Travis Medlock, Attorney
General for the State of South Carolina,
Respondents-Appellees.
 No. 88-6590.
 United States Court of Appeals, Fourth Circuit.
 Argued March 9, 1989.
Decided Aug. 9, 1989.
Rehearing and Rehearing In Banc Denied Oct. 2, 1989.
 
 John Frank Hardaway for appellant.
 Salley Wood Elliott, Assistant Attorney General (T. Travis Medlock, Attorney General, Donald J. Zelenka, Chief Deputy Attorney General on brief) for appellees.
 Before WIDENER, PHILLIPS, and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Ray Charles Degraffenreid, a South Carolina inmate, appeals from the denial of his petition for a writ of habeas corpus. 28 U.S.C.A. Sec. 2254 (West 1977). We affirm.
 
 I.
 
 2
 Degraffenreid is serving a life sentence on his conviction for the murder of Claude Killian who was fatally shot on August 5, 1973. Although Degraffenreid was questioned regarding his involvement in the murder shortly after the shooting and underwent a polygraph examination, he was not charged at that time. The investigation continued until January 1977 when an informant implicated Degraffenreid in the crime.
 
 
 3
 Degraffenreid was arrested for murder on January 29, 1977 while incarcerated on an unrelated charge. Five days after the arrest, on February 3, he confessed. He was subsequently indicted for murder by a grand jury and his first trial was held in May 1977 during which the confession was suppressed as involuntary. When the jury was unable to reach a verdict, the trial judge declared a mistrial. On retrial in November, a different trial judge who was assigned to that term of court admitted the confession. Degraffenreid was convicted and the conviction was affirmed on appeal by the South Carolina Supreme Court. State v. Degraffenreid, No. 79-10 (S.C. Jan. 15, 1979) (mem.).
 
 
 4
 Degraffenreid subsequently filed this habeas action asserting that the conviction was obtained with an involuntary confession. After appointment of counsel and an evidentiary hearing, the magistrate reported his proposed finding that Degraffenreid's confession was involuntary and recommended that a writ be issued. On de novo review, the district judge, in a well-reasoned opinion, found that Degraffenreid had not shown that his confession was involuntary and denied the petition. On appeal, Degraffenreid contends that the district court erred in placing the burden on him to prove the involuntariness of his confession and in concluding that he did not meet that burden.
 
 II.
 
 5
 State law enforcement investigation techniques, including interrogation, are governed at a minimum by the due process requirements of the fourteenth amendment. Colorado v. Connelly, 479 U.S. 157, 163 (1986). While police tactics which offend civilized notions of justice are strongly condemned, id., police questioning is a legitimate tool for effective criminal law enforcement. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). The due process clause does not prohibit police officers from questioning a suspect under all circumstances. Id.
 
 
 6
 The ultimate due process test for confessions is one of voluntariness: "Is the confession the product of an essentially free and unconstrained choice by its maker?" Id. A confession violates due process and must be suppressed only if it was obtained by tactics which overbore a suspect's will and critically impaired his capacity for self-determination. Id. at 225-26. Whether a confession is voluntary must be determined from an examination of "the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation." Id. at 226.
 
 
 7
 The characteristics of the suspect which should be considered include the age, education and intelligence of the suspect. Id. The setting and details surrounding the taking of the confession should also be considered, such as the length and conditions of detention and the frequency and duration of the questioning. Id.; United States v. Wertz, 625 F.2d 1128, 1134 (4th Cir.), cert. denied, 449 U.S. 904 (1980). The administration of Miranda[1] warnings is also a significant factor. Schneckloth, 412 U.S. at 226; Davis v. North Carolina, 384 U.S. 737, 740 (1966). And while heavy weight must also be given to the use of physical mistreatment, Reck v. Pate, 367 U.S. 433, 440 (1961), the use of psychological pressure may also render a confession involuntary, Ferguson v. Boyd, 566 F.2d 873, 877 (4th Cir.1977) (quoting Blackburn v. Alabama, 361 U.S. 199, 206 (1960)). Ultimately, "none of these various factors is to be considered in isolation, nor may the determination [of voluntariness] rest solely upon any one circumstance." Wertz, 625 F.2d at 1134. Determination of voluntariness does not turn "on the presence or absence of a single controlling criterion." Schneckloth, 412 U.S. at 226. All the surrounding circumstances must be carefully scrutinized. Id.
 
 
 8
 When a confession is challenged at trial, the prosecution bears the burden of proving by a preponderance of the evidence that the confession was voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972). On collateral review of a state conviction, the voluntariness of a confession is "a legal question requiring independent federal determination." Miller v. Fenton, 474 U.S. 104, 110 (1985). However, while federal habeas review of the ultimate question of voluntariness is plenary, subsidiary factual questions are presumed correct pursuant to section 2254(d), and federal courts "should ... give great weight to the considered conclusions of a coequal state judiciary." Id. at 112. On petition for a writ of habeas corpus, the petitioner bears the burden of establishing by a preponderance of the evidence that the confession was involuntary. Miller v. Fenton, 796 F.2d 598, 604 (3d Cir.) (on remand from 474 U.S. 104), cert. denied, 479 U.S. 989 (1986). We find that Degraffenreid did not meet his burden of establishing that his confinement, the nature of the questioning, or his personal characteristics--or any combination of these factors--rendered his confession involuntary.
 
 A.
 
 9
 A review of the record demonstrates that the conditions of Degraffenreid's confinement during his detention were not such as to overbear his will or impair his capacity for self-determination.
 
 
 10
 On January 29, 1977 Degraffenreid was incarcerated at the Chester County Law Enforcement Center serving a sentence unrelated to the murder. Upon his arrest for murder, he was moved from the stockade side of the facility to the jail side and placed in a single juvenile cell. Although Degraffenreid was not a juvenile, he was placed there to isolate him from the informant who was housed in the same facility. Although a notice was posted ordering that he was to have no visitors or telephone calls, law enforcement officers testified without contradiction that attorneys and clergymen were not considered "visitors" within this notice. And although Degraffenreid's brother testified that he attempted to visit him on several occasions during this period, the detention facility officials denied that these attempts were made.
 
 
 11
 Degraffenreid remained in this cell for the next five days except when being questioned or transported for investigative purposes. The cell measured 15 feet by eight feet and contained a bed, commode, sink, shower, table, and stool, and had a window in the door. The detention facility officials did acknowledge that Degraffenreid had complained that the cell was cold and requested to be moved. They explained that all the thermostats were set at 65 degrees to conserve energy, but to compensate each inmate was issued two blankets.
 
 
 12
 Although Degraffenreid occasionally refused to eat some of his meals, he was offered three meals a day. He alleged that he could not eat at times because of a problem with hemorrhoids. And while he further contended that he was denied medical assistance for this condition, the officials denied that he had made any such request. In any event, Degraffenreid fails to demonstrate that the alleged denial of medical care for his hemorrhoids would constitute an infliction of physical punishment equivalent to unconstitutional physical coercion.
 
 B.
 
 13
 Further, the questioning by law enforcement officials which preceded Degraffenreid's confession was not abusive or overbearing. The questioning was not relentless or incessant and Degraffenreid was advised of and waived his rights on several occasions. And by his own admission, no violence or threats of violence of any kind or to any degree were made by any official.
 
 
 14
 Immediately upon his arrest, Degraffenreid was fully advised of his rights which he acknowledged and waived in writing. At that time, he was questioned by Chester County Sheriff Orr and city police Detective Heath for less than an hour.
 
 
 15
 On January 30 Degraffenreid was questioned for approximately two hours by Detective Heath. He denied his guilt and requested that Heath investigate his alibi claim. Heath responded to this request and did, in fact, question Degraffenreid's alibi witness who did not confirm his story or provide any basis for an alibi defense.
 
 
 16
 On Monday morning, January 31, Degraffenreid was questioned for approximately two hours by Detective Heath. During this session, he consented to a polygraph test. That afternoon he was transported to the South Carolina State Law Enforcement Division (SLED) headquarters where the test was conducted. At that time, he was again advised of his rights and signed another waiver. Upon his return to Chester, he was questioned by Detective Heath, along with Captain Connor and Chief Straight for approximately three hours.
 
 
 17
 He was again questioned on Tuesday, February 1 and Wednesday, February 2 for several hours both in the morning and the afternoon. Although Degraffenreid admits that through Wednesday afternoon, he had not requested counsel, he contends that he asked Heath for an attorney on Thursday morning. When Degraffenreid was questioned at trial regarding why he waited until that time to request an attorney, he testified that he had finally realized he needed an attorney because the officials were not believing his story and he needed medical attention. In contrast, at the federal habeas proceeding, Degraffenreid testified that the request was prompted by hearing another detainee being advised of his rights on Wednesday night. Heath denied, at both the trial and the habeas proceeding, that such a request was made.
 
 
 18
 Degraffenreid confessed on Thursday afternoon while being questioned for the first time by SLED agent Reid Long. Prior to questioning, Degraffenreid was advised once more of his rights and signed a waiver.
 
 
 19
 Subsequent to the confession, Degraffenreid was taken before the Clerk of Court for appointment of counsel, even though as the law enforcement officers asserted, he had still not asked for an attorney. Also, the isolation was lifted and he was transferred to an adult maximum security cell.
 
 C.
 
 20
 Finally, Degraffenreid was not an uneducated youth dealing with law enforcement for the first time. He was a 21-year-old adult with a tenth grade education and an extensive criminal record. Moreover, since Degraffenreid was arrested on the murder charge while he was already incarcerated, the psychological impact of being arrested was no doubt lesser than had he been a free man who suddenly lost his liberty.
 
 III.
 
 21
 The delay in taking Degraffenreid before a judicial officer should not be sanctioned as ideal procedure. However, as this court has stated previously, " 'the voluntariness of a confession cannot be equated to the absolute absence of intimidation.' " Wertz, 625 F.2d at 1134 (quoting Johnson v. Hall, 605 F.2d 577, 582 n. 8 (1st Cir.1979)). Close scrutiny of the record does not establish by a preponderance of the evidence that the circumstances surrounding the confession were sufficiently egregious to cause Degraffenreid's will to be overborne or his capacity for self-determination to be critically impaired.
 
 
 22
 AFFIRMED.
 
 PHILLIPS, Circuit Judge, dissenting:
 
 23
 As the majority points out, on collateral review of a state conviction, the voluntariness of a confession is "a legal question requiring independent federal determination." Miller v. Fenton, 474 U.S. 104, 110 (1985). And the majority also rightly notes that a critical element of this legal inquiry is whether the suspect's will has been so overborne that his confession is not in that sense "voluntary." Slip op. at 3. What the majority (and the district court) have not sufficiently (or perhaps at all) taken into account, however, is that there is another element to the voluntariness question, namely, "whether the techniques for extracting the [confession], as applied to this suspect, are compatible with a system that presumes innocence and assumes that a conviction will not be secured by inquisitorial means." Id. at 116. As the Miller Court emphasized, "the admissibility of a confession turns as much on [this element] as on whether the defendant's will was in fact overborne." Id. (noting "hybrid quality of the voluntariness inquiry").
 
 
 24
 With all respect, I think the majority's determination of voluntariness is traceable precisely to its failure to consider the independent significance of the inquisitorial techniques employed in this case.
 
 
 25
 The first independent federal determination of voluntariness made in this case did not fail to appreciate the significance of that element. This was the determination made by Magistrate Carr of the United States District Court for the District of South Carolina on reference from the chief judge of that district. On the basis of a thorough evidentiary hearing at which he heard the live testimony of DeGraffenreid and the local and state officials who were most directly involved in the confinement and interrogation leading to DeGraffenreid's confession, the magistrate concluded in a carefully reasoned opinion that the confession was involuntary in the constitutional sense. While that conclusion could only be expressed in the form of a recommendation which was then rejected on de novo review by the district judge, I think the magistrate had it right, and my independent determination accords with his rather than with that of the district judge and the majority reviewing the matter again de novo on this appeal.
 
 
 26
 Because the judicial assessment we undertake here is one of judgment--of informed judicial feel--for whether the facts of record[1] reveal that this man's will was probably so overborne that his confession was not "the product of an essentially free and unconstrained choice," Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973), or whether constitutionally suspect inquisitorial techniques were used to extract the confession, there is little more to do in explaining one's judgment on the matter than to lay out the factual premises and announce it. If I had to explain it further, I could not do better than did Magistrate Carr in summarizing his assessment. After taking into account all of the factors upon which the majority here relies--that DeGraffenreid was not physically brutalized, nor deprived of food or drink or essential medical needs, nor subjected to any overt psychological ploys--Magistrate Carr nevertheless concluded that he was overborne in will and impaired in his capacity for essentially free choice by the totality of the circumstances to which he was subjected by the local and state officials, and that the techniques employed by state and local officials were indeed constitutionally impermissible ones.
 
 
 27
 The petitioner was held incommunicado for three (3) to five (5) days in solitary confinement. He had no exercise, no visitors, no telephone calls. He ate, slept, bathed, and existed within this one cell. There were no magazines, radios, television, books or other diversions. The only window was an observation window in the cell door which when opened revealed the hall and the door to the sheriff's office. The only time the petitioner was taken out of this reportedly cold cell was for questioning.
 
 
 28
 The only safeguard taken to protect the petitioner's rights was the giving of Miranda warnings. Despite the presence of judicial officers on the grounds of the facility and procedures for transporting prisoners to other court officials, the petitioner was not taken before a judicial officer, was not appointed an attorney and was not given any conditions of release until after he confessed.
 
 
 29
 .............................................................
 
 
 30
 ...................
 
 
 31
 * * *
 
 
 32
 Here, ... the totality of the circumstances, including but not limited to the repeated advice of rights, the length of the incommunicado questioning, the intentional imposition of solitary conditions of confinement, the delay in taking the petitioner before a judicial officer and the conduct of law enforcement authorities immediately after obtaining the petitioner's confession supports the conclusion that the confession was not the product of a free and deliberate choice rather than intimidation, coercion or deception. [Citations omitted.] Indeed the inference is that despite the advice of rights, the only way the petitioner was going to be released from solitary confinement and allowed contact with third parties was to give a confession. The undisputed facts are that as soon as he gave a confession he was released from solitary confinement and given counsel.
 
 
 33
 Because I share this persuasive assessment[2] of the nature and probable consequence of the palpably sinister--and ultimately successful--course of prolonged incommunicado confinement and interrogation, I dissent and would reverse and direct conditional grant of the writ.[3]
 
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [1]
 So far as the record reveals, Magistrate Carr did not fail to give to any state court findings on subsidiary factual questions the deference due them in the course of his plenary review of the ultimate question. See Miller v. Fenton, 474 U.S. at 117. Nor, in turn, did the district judge, in the course of rejecting the magistrate's ultimate determination of involuntariness, reject any of the magistrate's subsidiary findings on the critical points of location, duration, warnings, treatment, etc. In effect, there is then no real dispute as to the factual circumstances
 
 
 [2]
 An assessment whose persuasiveness is bolstered by the fact that it was also made (though possibly on different grounds and reasoning) by the first state trial judge who considered the confession's voluntariness. Out of all the judges who have considered the voluntariness of this confession, only three have done so on the basis of evidentiary hearings; of those three, two have found it involuntary
 
 
 [3]
 Also with the magistrate, I would hold that the error of admitting this confession could not conceivably be considered harmless beyond a reasonable doubt. The hung jury in the first trial conducted without the confession amply demonstrates that