925 F.2d 1458
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel THOMAS, a/k/a John Robert Brown, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bruce BAYTON, Defendant-Appellant.
 Nos. 90-5029, 90-5030.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1990.
Decided Feb. 19, 1991.
As Amended June 3, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., District Judge. (CR-89-267-B)
 Michael T. CitaraManis, Assistant Federal Public Defender, Ralph Kenneth Rothwell, Jr., Baltimore, Md. (Argued), for appellants; Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on brief.
 William Warren Hamel, Assistant United States Attorney, Baltimore, Md. (Argued), for appellee; Breckinridge L. Willcox, United States Attorney, William K. Meyer, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED IN PART AND VACATED IN PART.
 Before WILKINSON and NIEMEYER, Circuit Judges, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Samuel Thomas and Bruce Bayton were convicted in the United States District Court for the District of Maryland of robbing a Baltimore branch of the American National Savings Bank in violation of 18 U.S.C. Secs. 924(c) and 2113. They were acquitted at the same trial on all counts arising from two robberies of a branch of the Maryland National Bank which had taken place in the five weeks before the crime at the American National Savings Bank. Thomas and Bayton now appeal their convictions on a number of grounds, including that the trial court erred in admitting Thomas' confession and in not severing the counts and the defendants. We find these contentions to be without merit.
 
 I.
 
 2
 On May 16, 1989, a branch of the Maryland National Bank located on Security Boulevard in Baltimore was robbed by two black men. The robbers wore dark clothes and hats, nylon masks and surgical gloves. One was tall and thin and the other was shorter and heavier. The taller robber went to the row of tellers to collect money while the shorter robber held bank employees in the platform area at gunpoint. After warning the tellers to give them large bills and not to hand over "dye packs," the robbers left the bank while shouting "God bless you all" or "have a nice day." They ran behind a nearby bowling alley and left in a dark sedan.
 
 
 3
 A few weeks later, on June 9, 1989, the two men returned and robbed the same bank again. Following the same procedure they had used on the prior occasion, the taller robber crossed to the row of tellers while the shorter and heavier one held customers and employees in the platform area at gunpoint. The taller of the two again wore dark clothes, a stocking mask, a hat and gloves, and carried a gun. He informed a teller that it was "good to see you again." The shorter robber did not wear a mask, hat or gloves and was more nervous than during the previous crime. The two left the bank together, while exclaiming "God bless you all."
 
 
 4
 On June 22, 1989, a branch of the American National Savings Bank that was located a few minutes by car from the Security Boulevard branch of the Maryland National Bank was robbed by two black men wearing dark clothes, hats, nylon masks and gloves. One was taller and thinner and the other was shorter and heavier. Once again the taller man collected money from the tellers while the shorter one held employees and customers at gunpoint from the office area. The tellers were again ordered to give big bills and not to hand over "dye packs." The robbers left the bank together, warning the people inside to stay on the floor because they would be back. A witness saw the men leave the bank and escape by car; she observed the license plate number of the vehicle and gave it to the police.
 
 
 5
 Investigators traced the car to Judy Gayle, Samuel Thomas' girlfriend, who lived near both the banks that had been robbed. Gayle's daughter told the police that Thomas and Bruce Bayton had borrowed the car on June 22 shortly before the robbery and had returned it shortly afterwards.
 
 
 6
 Thomas was arrested on June 24, 1989 when he, Gayle, and a third person arrived at a local motel. Gayle was not arrested. Thomas was taken to FBI headquarters where he confessed to the three robberies. Bayton was arrested a month later and also confessed to all three robberies. Police identified fingerprints in Gayle's car as belonging to both Bayton and Thomas, and a search of Bayton's residence produced several articles of clothing, including hats and surgical gloves that were introduced into evidence. Bayton's confession was later suppressed by the district court, but Thomas' statements were not.
 
 
 7
 Thomas and Bayton were charged with all three robberies. A jury convicted them both on three counts relating to the June 22 robbery of the American National Bank. They were acquitted on all counts relating to the two robberies of the Maryland National Bank. They now appeal their convictions.
 
 II.
 
 8
 Thomas argues that his statements to the police should have been suppressed because they were coerced and involuntary. He claims that police threatened to create legal problems for his girlfriend, Judy Gayle, and to take Gayle's children from her. Absent the threats, he asserts, he never would have confessed.
 
 
 9
 We find no reason that Thomas' statements should have been suppressed. After conducting an extensive hearing at which Thomas, Gayle, and the arresting and interviewing FBI agents testified, the district court found that no threats had been made to Thomas. Both FBI agents stated that they made no such threats, either at the time of arrest or during the brief interrogation at FBI headquarters immediately afterwards. At most, the record shows that Thomas, of his own initiative, expressed concerns to the agents about what would happen to Gayle. Thomas admitted that police never told him that Gayle had been arrested or that she would be charged with any offense. He also was unable to identify which FBI agent allegedly made a statement that Social Services could take custody of Gayle's children.
 
 
 10
 Furthermore, both Gayle and Thomas testified that Thomas had been considering turning himself him, and that they had gone to the motel where the arrest took place to discuss their plans. Both FBI agents attested that Thomas began talking almost as soon as questioning began, and that the entire interview at headquarters lasted only an hour. Thomas' Miranda rights were not violated at any point in the process, nor is there evidence of any coercion that would have overborne Thomas' will. Compare Ferguson v. Boyd, 566 F.2d 873 (4th Cir.1977) (confession suppressed when defendant's Miranda rights were repeatedly violated and his girlfriend was separated from her children for a week on dubious grounds). All these factors point to a confession that was given voluntarily.
 
 
 11
 In light of all the testimony, the court did not find Thomas to be a credible witness. The record does not show the district court's findings that no threats were made to be clearly erroneous. Thomas' incriminating statements were properly admitted at trial.
 
 III.
 
 12
 Both Thomas and Bayton assert that the trial court erred in denying their motions for severance of the counts. The similarities betweeen the various robberies were so minimal or generic, they allege, that trying all three robbery charges together was unjustified. See United States v. Foutz, 540 F.2d 733 (4th Cir.1976). They maintain that the only characteristic that might have sufficed to denote a "signature" was that the robbers stated "God bless you" or "have a nice day" as they left. Because such exclamations were uttered only during the two Maryland National Bank robberies and not during the American National Bank robbery, it was error to join the three crimes, they argue. Bayton additionally claims that after the court granted a motion to suppress his statements, no direct evidence linked him to the two robberies of the Maryland National Bank. He theorizes that the sheer number of charges against him overwhelmed the jury, leading to his conviction on the theory that he "must be guilty of something."
 
 
 13
 We cannot agree. The similarities between the robberies justify trying all three crimes in the same proceeding and the district court did not abuse its discretion in so recognizing. The characteristics of the banks, the physical descriptions of the robbers, the division of labor among the robbers and the method of escape are all comparable. First, the banks are in the same neighborhood and the three robberies occurred in the space of a five week period. Additionally, the robbers both wore dark clothing; one was tall and thinner and the other was shorter and heavier. They wore stocking masks, hats, and gloves. They both carried guns. After entering the banks together, the robbers would separate and execute their individual tasks. The taller robber would go to the teller line and collect money from each teller in turn. He would instruct them to give him only large bills and not to include any dye packs with the money. The shorter robber would go to the platform area and hold employees and customers at gunpoint. Finally, the robbers would flee together in a getaway car that had been parked nearby.
 
 
 14
 Appellants attempt to dismiss these striking similarities by pointing to occasional dissimilarities. For example, the shorter robber, Thomas, did not wear a mask during the second robbery. Despite that alteration from the first robbery, appellants do not dispute that both robberies of the Maryland National Bank were conducted by the same two men. Some small changes may be evident from occasion to occasion, and indeed may even be expected; they do not, however, diminish the many substantial resemblances among the crimes. There was no abuse of discretion in trying the three robberies in the same proceeding.
 
 IV.
 
 15
 Bayton additionally contends that the trial court erred in denying his motion for a trial separate from Thomas. He claims that evidence introduced against Thomas, particularly Thomas' confession, necessarily prejudiced his case as well.
 
 
 16
 We see no abuse of discretion in refusing to sever the defendants. Thomas' confession, as admitted at trial, was shorn of any reference to Bayton in particular, or to an accomplice in general. This treatment avoided any possibility of causing undue prejudice to Bayton. See Richardson v. Marsh, 481 U.S. 200 (1987). Furthermore, the fact that the jury acquitted Bayton on all of the charges relating to the two Maryland National Bank robberies tends to undermine his theory of prejudice. See United States v. Porter, 821 F.2d 968, 972 (4th Cir.1987).
 
 V.
 
 17
 Appellants argue that their convictions under Count One for bank robbery should have been dismissed as lesser included offenses of Count Two for armed bank robbery. The government concedes this point. Resentencing is unnecessary, however, because the sentences for both counts were ordered to run concurrently. We therefore simply vacate the convictions and sentences on Count One.
 
 The judgment of the district court is
 
 18
 AFFIRMED IN PART AND VACATED IN PART.