COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Humphreys and Chafin
Argued at Chesapeake, Virginia

UNPUBLISHED

TRAVIS LANARDA BAILEY

MEMORANDUM OPINION* BY
v.      Record No. 0463-13-1                    JUDGE ROBERT J. HUMPHREYS
                                                APRIL 15, 2014
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

Charles E. Haden for appellant.

Lauren C. Campbell, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Travis Lanarda Bailey ("Bailey") appeals his convictions by the Newport News Circuit

Court (the "trial court") for possession of marijuana with intent to distribute in violation of Code

§ 18.2-248.1 and possession of a firearm while simultaneously possessing with intent to

distribute a controlled substance in violation of Code § 18.2-308.4(C). Bailey's first assignment

of error is that the trial court improperly denied his motion to suppress the evidence because he

only consented to a search of his home after he was "overborne by police threats" to "take away

his children and put them in foster care," thereby making his consent involuntary and

unconstitutional. Bailey's second assignment of error is that the evidence is insufficient to

support his firearm-related conviction because the Commonwealth failed to prove he had "actual

or constructive possession of a working firearm." For the reasons that follow, we affirm Bailey's

convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Newport News Police Department responded to a domestic disturbance at Bailey's apartment after Bailey himself called the police. When the police arrived, Bailey invited the three responding officers inside. Immediately upon entering, the police smelled the strong odor of marijuana. Bailey admitted that he "had just smoked some." The police detained and Mirandized all the adults in the apartment. While doing a protective sweep of the apartment, the police discovered an empty box of ammunition in plain sight. Bailey confirmed that there was a gun present in the home and offered to show it to the police, which he did. Officer Groom asked Bailey if there was any marijuana in the house and if he would give the police consent to search the apartment. After Bailey refused to give consent to search, Officer Groom explained that they could get a search warrant to search based on the odor of marijuana, or Bailey could speed up the process by signing a consent form which would be delivered momentarily. Bailey, who "was getting impatient" waiting for the consent form, "on his own volition," took the officer to his bedroom closet and showed him "a shoe box and a jar, a mason jar, full of suspected marijuana." The officers did not start searching Bailey's home for contraband until after Bailey had formally signed the consent form at 9:46 a.m.—less than twenty minutes after he was first Mirandized. After the consent form was signed, the police searched the apartment and found "a child's backpack in his closet that contained another Ziploc bag of suspected marijuana," a box for a digital scale, and sandwich bags.

Before his bench trial, Bailey moved to suppress the Commonwealth's evidence, asserting that the search of his home violated the Fourth Amendment because he involuntarily gave his consent. Specifically, he asserted that he only consented to the search because the police threatened to arrest all the present adults and call social services and have his children placed in foster care.

The parties disagreed about whether the discussion about the fate of Bailey's children occurred before or after Bailey consented to the search. Bailey testified that it preceded his consent, and the police raised it as purely a coercive tactic. The three police officers recalled that any discussion about Bailey's children followed their discovery of the contraband and Bailey's resulting arrest, and therefore could not have influenced his consent. The trial court concluded that because the police never actually contacted social services and the children were never removed from the home, the officers' remarks about calling social services were likely intended to persuade Bailey to consent to the search and probably occurred before he signed the consent form. However, the trial court determined that *even if* the police made remarks about calling social services intending to persuade Bailey to consent to a search, those statements alone were insufficient to make Bailey's consent legally "involuntary." Specifically, the trial court noted that "to merely make the statement without more that [sic] we're going to have to take the children, we're going to have to take everyone in this house, I do not think that's sufficient to make a consent to search involuntary from a legal basis." Consequently, the trial court ruled that Bailey's consent to the search was voluntary and not coerced by the police, and therefore denied his motion to suppress.

On appeal, Bailey argues that the trial court improperly denied his motion to suppress the Commonwealth's evidence and reasserts his argument that he only consented to the search of his home after he was "overborne by police threats" to take his children away if he did not comply with the officers' request. This Court reviews "'a trial court's denial of a defendant's motion to suppress . . . *de novo* when the defendant claims that the evidence sought to be suppressed was seized in violation of the Fourth Amendment.'" Knight v. Commonwealth, 61 Va. App. 297, 305, 734 S.E.2d 716, 720 (2012) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008)). While this Court "review[s] *de novo* the trial court's application of

- 3 -

defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case," Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999), its review is "'bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them,'" Knight, 61 Va. App. at 305, 734 S.E.2d at 720 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures in a person's home are presumptively unreasonable. Glenn, 275 Va. at 130, 654 S.E.2d at 913 (citing Payton v. New York, 445 U.S. 573, 586 (1980)). However, a general exception to that rule is if a party voluntarily consents to the search. Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). For consent to be valid it must be "'freely and voluntarily given,'" and the burden rests with the Commonwealth to demonstrate a lack of duress. Deer v. Commonwealth, 17 Va. App. 730, 734-35, 441 S.E.2d 33, 36 (1994) (quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). Voluntariness is a question of law that requires an independent evaluation of the evidence on appeal to determine whether consent was voluntary. See Hill v. Commonwealth, 52 Va. App. 313, 319, 663 S.E.2d 133, 136 (2008). However, this Court "must give 'deference to the factual findings of the trial court' and 'independently determine' whether those findings satisfy the requirements of the Fourth Amendment." Kyer v. Commonwealth, 45 Va. App. 473, 479, 612 S.E.2d 213, 217 (2005) (quoting Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003)).

The United States Supreme Court has held that "the traditional definition of voluntariness" applies to consent for searches. Schneckloth, 412 U.S. at 229 (holding that the traditional standard for "voluntariness" as it applies to confessions, applies to consent for searches). The pertinent question is whether the consent was "'the product of an essentially free

- 4 -

and unconstrained choice by its maker, or whether the maker's will was overcome and his capacity for self-determination critically impaired.'" Hill, 52 Va. App. at 319, 663 S.E.2d at 136 (quoting Novak v. Commonwealth, 20 Va. App. 373, 386-87, 457 S.E.2d 402, 408 (1995)). If the defendant's will was "overborne," the consent cannot be deemed the product of free will and is consequently invalid. Id. at 318, 663 S.E.2d at 135-36. Conversely, "'[v]oluntariness is not equated with the *absolute* absence of intimidation.'" Id. at 319, 663 S.E.2d at 136 (emphasis added) (quoting United States v. Pelton, 835 F.2d 1067, 1072 (4th Cir. 1987)); see also United States v. Braxton, 112 F.3d 777, 780 (1997) ("The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary."). Rather, a "'finding of coercion and involuntariness must be based upon a careful consideration of the totality of the circumstances,'" because "'the degree of pressure necessary to crush one's will varies with the individual.'" Id. (quoting Ferguson v. Boyd, 566 F.2d 873, 877 (4th Cir. 1977)).

Our Supreme Court has held that threats to prosecute a family member *may* render a confession involuntary—however, it is merely *one factor* that courts must consider when evaluating all the evidence relevant to voluntariness.[1] See Tipton v. Commonwealth, 224 Va. 256, 295 S.E.2d 880 (1982). In Hill, the police lawfully arrested a brother and sister pursuant to probable cause for possession of cocaine. 52 Va. App. at 319, 663 S.E.2d at 136. On appeal, Hill argued that his confession was involuntary because it was induced by police threats to prosecute his sister if he did not confess. This Court found that a promise to forgo a valid

---

[1] Bailey relies on Tipton v. Commonwealth, 224 Va. 256, 295 S.E.2d 880 (1982), in support of his argument that the police remarks about his children render his consent involuntary. However, as this Court explained in Hill, Tipton merely holds that a trial court must *consider* all relevant evidence in determining whether a confession was induced by threats to prosecute family members, it "does not hold that a threat to prosecute a family member is a *per se* violation, nor does Tipton instruct on what quantum of evidence is necessary to render a confession involuntary and therefore inadmissible." Hill, 52 Va. App. at 319, 663 S.E.2d at 136.

prosecution against a *lawfully* charged party was not unlawfully coercive, noting that a "'confession is not *per se* invalid merely because the confessor implicates himself in an effort to secure the best possible disposition of a charge pending against a relative or friend.'" Id. at 319-20, 663 S.E.2d at 136 (quoting Ferguson, 566 F.2d at 878 n.7 (noting that it must additionally be shown that the friend or relative was improperly detained or threatened as the means of coercion)). Hill's "desire to extricate his sister from a *valid* arrest d[id] not in itself render his confession involuntary." Id. at 321, 663 S.E.2d at 137 (emphasis added). The Court heavily relied on the fact that the statements the officer made simply informed Hill "of the possible consequences of his and his sister's illegal acts," and thus were based on fact rather than retribution.[2] Id. at 322-23, 663 S.E.2d at 137-38. Noting that while the "circumstances may have presented a difficult choice," Hill was not induced to confess to exculpate his sister. Id. at 323, 663 S.E.2d at 138.

In this case, the trial court found that "nothing that [the officers] said . . . [was] inaccurate." The trial court framed the issue, with the agreement of defense counsel, as: "whether [the officers] stating *a fact*, we're going to take your children to social services, does that take away the voluntariness." Although the trial court concluded that the officers indeed acted with the intention to persuade Bailey to consent to the search—a fact this Court is bound by on appeal—it ultimately concluded that stating that truthful fact, without more, was insufficient to make his consent legally involuntary. We agree.

---

[2] Hill cited numerous other state and federal jurisdictions that similarly hold that a desire to shield a family member from criminal liability does not render a confession involuntary, and likewise noted that a confession may be involuntary if it was induced by a threat or promise of *illegal* action. 52 Va. App. at 322-23, 663 S.E.2d at 137-38; accord Ferguson, 566 F.2d at 878 n.7 ("It is recognized that a confession is not *per se* invalid merely because the confessor implicates himself in an effort to secure the best possible disposition of a charge pending against a relative or friend. Rather, it must also be shown that the friend or relative was improperly detained or threatened as the means whereby the confession was involuntarily exacted." (citations omitted)).

Neither of the three responding officers, nor Bailey himself, testified that the officers threatened to do anything illegal or improper. The officers arrived at the house in order to respond to a domestic disturbance, where they immediately detected the strong odor of marijuana. On his own volition, Bailey showed the officers a firearm and a select portion of the marijuana he had in his home. The officers truthfully informed Bailey that at some point in the evening they would need to call social services to ensure that his children were cared for while they waited for a search warrant or upon his arrest.[3] While the officers' subjective intentions may have been to convince Bailey to consent to the search,[4] Bailey retained his free will to choose whether to cooperate or to wait for the police to obtain a warrant. See United States v. Elie, 111 F.3d 1135, 1146 (4th Cir. 1997) (holding that the "police can give a defendant truthful information, even if that information forces the defendant to make a choice between two unpleasant alternatives" because "'truthful statements about [the defendant's] predicament are not the type of coercion that threatens to render a statement involuntary'" (quoting United States v. Williams, 479 F.2d 1138, 1073 (4th Cir. 1973))). Viewed in the light most favorable to the Commonwealth, the record demonstrates that Bailey consented to the search in order to serve his own self-interests by mitigating the scope of incriminating evidence the police would uncover. The officers' statements about calling social services, without more, do not render Bailey's consent legally involuntary. Considering the totality of all the circumstances, there is nothing in

---

[3] If all the adults present were taken into custody, the police would be obligated to wait for social services to arrive before leaving the scene. Moreover, if the police had a reason to suspect the children were potentially being abused or neglected, they had a duty to call social services. See Code § 63.2-1509.

[4] Importantly, a police officer's unexpressed subjective intentions are not relevant to the court's determination of whether consent is given voluntarily. See Maryland v. Macon, 472 U.S. 463, 470-71 (1985) ("Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." (quoting Scott v. United States, 436 U.S. 128, 136 (1978))).

- 7 -

the record that suggests that Bailey's free will was overborne and his consent to search was therefore valid. Accordingly, we hold that the trial court did not err in denying Bailey's motion to suppress the evidence.

## II. SUFFICIENCY OF THE EVIDENCE

Bailey's second assignment of error is that "[t]he trial court erred in finding Bailey guilty of possession of a firearm while simultaneously in possession of a controlled substance, where the evidence was insufficient to prove that Bailey had actual or constructive possession of a working firearm." When the sufficiency of the evidence is challenged on appeal, our review is guided by well-established principles—"[t]his Court 'must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). The relevant inquiry is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc).

The majority of Bailey's argument on this issue relates to whether Bailey had actual or constructive possession of the firearm. He dedicates only two sentences, citing no authority, to his additional argument that "the Commonwealth failed to prove that the firearm was in operating condition." Each assertion is addressed in turn below.

### A. Dominion and Control

On appeal, Bailey argues that despite his knowledge of, and proximity to, the firearm, the Commonwealth failed to establish that he actually or constructively possessed the firearm as required by statute because he did not own the firearm, he was not in actual possession of the firearm, his DNA and fingerprints were not on the firearm, and he did not exercise "dominion

- 8 -

and control" over the firearm. However, at trial, Bailey never argued that he did not possess the firearm—actually or constructively.

Pursuant to Rule 5A:18, this Court will not hear arguments that were never presented to the trial court. The purpose of the rule is "to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court." Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2007). While formal objections are not necessarily required to properly preserve an issue for appeal, in order to properly comply with Code § 8.01-384 and Rule 5A:18 "counsel may make clear the ground for his objection in a motion to strike the evidence or in closing argument." Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991). "If a closing argument adequately advises the trial court of the defendant's position and if it is clear that the trial court considered the issue and had an opportunity to take corrective action, the contemporaneous objection rule is satisfied." Fortune v. Commonwealth, 14 Va. App. 225, 228, 416 S.E.2d 25, 27 (1992).

The only argument related to the firearm contained anywhere in the record is that the firearm "was not operable." Because Bailey never argued below that he did not possess the firearm, the trial court was unable to "intelligently address, examine, and resolve" any arguments surrounding Bailey's actual or constructive possession of the firearm. Consequently, Rules 5A:18 and 5A:20(e) bar our consideration of this argument.

### B. Operating Condition

Bailey additionally argues that the Commonwealth "failed to prove that the firearm was in operating condition" because there was not a round in the chamber and "no one could be harmed by it." Bailey cites no legal authority in support of this contention. This argument is without merit.

It is well established that to sustain a firearm possession conviction "[i]t is not necessary that the Commonwealth prove the instrument was operable, capable of being fired, or had the actual capacity to do serious harm," instead, "the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion." Armstrong v. Commonwealth, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002) (defining "firearm" under Code § 18.2-308.2); accord McDaniel v. Commonwealth, 264 Va. 429, 429, 574 S.E.2d 234, 234 (2002) (applying Armstrong to define "firearm" under Code § 18.2-308.4).

In this case, Bailey merely argues that the firearm was "inoperable" because even though it was loaded, there was no round in the chamber and therefore further action was required to fire it. However, the instrument, a nine-millimeter handgun, was unquestionably designed, made, and intended to be fired. Even Bailey's trial counsel acknowledged, "I know it's a firearm." The certificate of analysis found the firearm to be "in mechanical operating condition with the safety features functioning properly and test fired with the submitted magazine." Bailey himself repeatedly referred to the instrument as a gun and treated it as such by usually putting it in a lock box. See Kingsbur v. Commonwealth, 267 Va. 348, 352, 593 S.E.2d 208, 210 (2004) (finding that the defendant "considered it a handgun because he did not want a child to '[get] ahold of it'"). Consequently, there is sufficient evidence in the record to support the trial court's finding that the instrument that Bailey possessed "was designed, made, and intended to expel a projectile by means of an explosion," and therefore is a firearm within the meaning of the statute. Barlow v. Commonwealth, 61 Va. App. 668, 673, 739 S.E.2d 269, 272 (2013).

In sum, there is sufficient evidence in the record to support Bailey's conviction of possessing a firearm while simultaneously possessing a controlled substance in violation of Code § 18.2-308.4(C).

## III. CONCLUSION

For the reasons stated above, we affirm Bailey's convictions for possession of marijuana with intent to distribute in violation of Code § 18.2-248.1 and possession of a firearm while simultaneously possessing with intent to distribute a controlled substance in violation of Code § 18.2-308.4(C).

Affirmed.